IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 03-249 |
| LODISE WADLEY | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Patrick L. Meehan, United States Attorney for the Eastern District of Pennsylvania, and Joseph LaBar, Special Assistant United States Attorney for the District, respectfully submits this Sentencing Memorandum regarding defendant Lodise Wadley, who is scheduled to be sentenced on January 20, 2005 . For the reasons provided below, the government recommends a sentence within the Guideline range of 262 to 327 months to be followed by mandatory sentences totaling 360 months, for a total sentence in the range of 622-687 months.

I.  BACKGROUND

Defendant Wadley was convicted by a jury of nine counts, including two counts of 18 U.S.C. § 924(c)(1)(A)(i) (carrying a firearm in furtherance of a drug trafficking crime); two counts of 21 U.S.C. § 841(a) (Distribution/ possession with the intent to distribute cocaine base); one count of 21 U.S.C. § 860 (possession with intent to distribute "crack" cocaine within 1,000 feet of a school); one count of 21 U.S.C. 856(a)(1)(maintaining a place for the purpose of manufacturing, distributing, and using a controlled substance), one count of 18 U.S.C. § 931 (Possession of body armor ) and two counts of 18 U.S.C.§ 922(g)(1)(felon in possession of a

firearm). The charges arose from one arrest of the defendant in the area of 1500 South 24th Street on January 24, 2003, and another arrest of the defendant inside his premises at 1532 South Taylor Street on May 7, 2003.

**II.     FACTS**:

The defendant's crimes of conviction occurred on January 24, 2003 and May 7, 2003. A brief review of the facts as proven at trial follows.

THE JANUARY 24, 2003 ARREST:

On January 24, 2003, at 8:35 pm, a team of Philadelphia Police Narcotics officers was riding in an unmarked police vehicle in the area of 1500 South 24th Street. The officer driving the car noticed an apparent drug transaction begin to unfold, and alerted the other officers. The seller was Lodise Wadley. As the officers watched, Wadley was approached by an unknown male, who handed him cash. They saw Wadley hand a small object back to the male. The officers decided to investigate further. As they pulled their car to a halt, Wadley and his customer looked towards them, and both men fled.

Although Wadley's customer was able to elude police, as he fled he dropped a green tinted packet of apparent narcotics to the ground. That packet was recovered by Police Officer Derrick Garner, and was later tested and found to contain crack cocaine.

Wadley was closely pursued by Police Officer Louis Gregg, who chased Wadley into a nearby alley. While running in the alley, Wadley drew a handgun from his waistband and discarded it. He also discarded a plastic bag that contained four additional green tinted packets of crack identical to that thrown down by Wadley's customer. Wadley was then apprehended.

Officer Gregg recovered the gun, a loaded .45 caliber semiautomatic handgun, and drugs that Wadley had discarded, as well as $171.00 U.S. currency from Wadley's person.

On April 15, 2003, a federal grand jury indicted Wadley for 18 U.S.C.§ 922(g)(1)(felon in possession of a firearm); 18 U.S.C. § 924(c)(1)(A)(i) (carrying a firearm in furtherance of a drug trafficking crime); 21 U.S.C. § 841(a) (Distribution/ possession with the intent to distribute cocaine base)(two counts); and 21 U.S.C. § 860 (possession with intent to distribute "crack" cocaine within 1,000 feet of a school)(one count).

THE MAY 7, 2003 ARREST:

On May 7, 2003, Special Agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and Philadelphia Police Department Detectives went to Wadley's property at 1531 South Taylor Street to arrest him. They had obtained a search warrant to look for him at that address from the Honorable Thomas Rueter one day earlier. In the course of carrying out that arrest, the agents conducted a protective sweep during which they found contraband in plain view. They secured a second search warrant from Judge Rueter allowing for a full search of the premises, and recovered numerous additional items of contraband. Those recoveries were the basis for November 4, 2003 superseding indictment, and included four handguns, a ballistic vest, drug paraphernalia, and ammunition.

II.   SENTENCING CALCULATION

    A.   Statutory Maximum Sentence

        The maximum sentence that may be imposed on defendant is life in prison.

    B.   Sentencing Guidelines Calculation

The defendant's history of criminal convictions qualifys him as a career offender within the meaning of U.S.S.G. § 4B1.1. His total offense level is thus 34.  PSR ¶ 27, 29, and his criminal history category is VI.  PSR ¶ 40, 41. The government urges that the Court impose a sentence within the final guideline range, which is 262 to 327 months to be followed by mandatory sentences totaling 360 months, for a total sentence in the range of 622-687 months.

In United States v. Booker, 2005 WL 50108 (U.S. Jan. 12, 2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury.  As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory."  Booker, 2005 WL 50108, at *16.  This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction.  The sentence will be subject to review by the Court of Appeals for "reasonableness."  Id. at *24.

In the wake of Booker, this Court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed.  Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."  Id. at *27.

The position of the United States is that, absent highly unusual circumstances, the sentence in a criminal case should fall within the guideline range as determined by the Court.

This view is shared by Congress and the Supreme Court. As every Supreme Court justice in the various opinions in Booker recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history. See, e.g., id. at *21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at *19 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at *42 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at *47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other

correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."

Thus, fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing, and should occur absent unusual circumstances.  The government commends to the Court's attention the scholarly opinion in United States v. Wilson, 2005 WL 78552 (D. Utah Jan. 13, 2005), which shared this conclusion.  In his assessment in Wilson, on the day after Booker was decided, Judge Cassell explained at length the reasons supporting this view.  As he stated, the Guidelines represent the product of an expert commission, which has studied the sentencing process at great length, under the specific mandate of Congress to fashion recommended sentences which carry out the purposes defined by Congress.  The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to Congressional preference.  Wilson further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness.  For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons."  Id. at *1.

Accordingly, a sentence within the guideline range is presumptively reasonable, and accommodates the Congressional purpose, affirmed by the Supreme Court, of obtaining fair sentences which are uniform to the extent possible.  The government anticipates that only

sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.

In this case no unusual circumstances exist which warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Guidelines range calculated in the PSR.

III.    GOVERNMENT'S RECOMMENDATION

As set forth in the PSR, with an offense level of 34 and a criminal history category of VI, defendant falls within the sentencing range of 262 to 327 months to be followed by mandatory sentences totaling 360 months, for a total sentence in the range of 622-687 months. months. The government respectfully recommends that the Court impose a period of incarceration within this Guidelines range. Such a sentence would recognize the seriousness of defendant's offense conduct, and his persistent criminal recidivism.

For all of the above reasons, the government respectfully recommends that the Court impose a period of incarceration within the Guidelines range established by the PSR.

                Respectfully submitted,

                PATRICK L. MEEHAN
                United States Attorney


                _____
                JOSEPH A. LaBAR
                Special Assistant United States Attorney

Date:   January 19, 2005.

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been served by facsimile and First Class mail, postage prepaid, on this date to:

      Patrick J. Egan, Esq.
      239 S. Camac Street
      Philadelphia, PA 19107
      FAX # 215-546 - 5002

.

_____
JOSEPH A. LaBAR
Special Assistant United States Attorney

Dated:   January 19, 2005