TRULINCS  57447066 - WADLEY, LODISE - Unit: GIL-B-C

---------------------------------------------------------------------------------------------------

FROM: 57447066
TO:
SUBJECT: motion
DATE: 04/07/2021 07:13:59 AM

In The United States District Court
                    For The Eastern District of Pennsylvania

Lodise Wadley                          .

v.                                     .    Case No. 03-00249-01

                                       .
United States                          .


MOTION PURSUANT TO 18 U.S.C. 3582(C)(1)(A)(i) REFERENCING CONGRESS'S RECENT CHANGES TO 3582 FOR THE
INTEREST OF SENTENCING MODIFICATION BASED UPON EXTRADODINARY AND COMPELLING REASONS FOR
COMPASSIONATE RELEASE

    Comes now, Lodise Wadley Pro Se respectfully moves this court to grant his motion for compassionate release under 18
U.S.C 3582 (c)(1)(A) based on the "extraordinary and compelling reasons" in light of the significant sentencing disparity created
by the First Step Act of 2018. A defendant proceeding Pro Se may meet the burden by demonstrating (1) that he satisfied the
statuory exhaustion requirement (2) that extraordinary and compelling reason exist for a sentencing reduction, and (3) That a
sentence reduction is consistent with the applicable sentencing guidelines provision. United states v. Schultz_F.Supp.3d_2020
U.S. Dist Lexis 66512, 2020 WL 1872352 at *2(W.D My April 15,2020) specifically, The First Step Act states, "a defendant may
go to Court, after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of prisons to bring
a motion on the defendants behalf of the lapse of 30 days from receipt of such a request by the warden of the defendant's
facility, whichever is earlier.. 18 U.S.C 3582 (c)(1)(A)

Pursuant to congress's direction, and prior the First Step Act, the sentencing commission established four categories of
circumstances in which in the commisions view, "Extraordinary and compling reasons" exist. U.S. Sentencing guidelines
manual 1B1.13 cmt.n1 (U.S.S.C 2018). Those circumstances relate generally to : (1) The defendants medical condition; The
defendants age; the defendant's family circumstances, and any other reason that the BOP director determines to be
extraordinary and compelling.ID. What circumstances might otherwise be deemed "extraordinary and compelling" under that
last, catch-all provision, were not further clarified, but were left to the BOP director to determine. See; United States v.
Rodriguez, No 2:03-cr-271,2020 WL 1627331, at 2 (E.D. Pa. Apr 1,2020). However, the majority of courts have concluded that
they are no longer bound by the specific categories identified by the sentencing commision prior to the enactment of the First
Step Act. See United States v. Young No. 00-cr-00002, 2020 WL 1047815. of *6 (M.D. Tenn. Mar. 4, 2020) ("a majority of the
district courts that have considered the issue have.. held, based on the First Step Act, That they have the authority to reduce a
prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons")(Citing case). So now the
defendant himself may bring a motion for relief, regardless of whether the BOP director considers such relief appropriate, if
administrative remedies were properly exhausted. See United States v. Raia, 954 f.3d.594 597 (3rd. Cir 2020) Administrative
remedies have been exhausted see exhibit (Appendix D)


                                              Summary

As of date, petitoner suffers from an obvious improper and undeserved sentence compounded by a complex series of related
parts. All of which, if addressed today would result in a much less severe sentence. First, Petitioner is restrained by the
unwarranted wrath of two stacked 924(c)'s resulting in 30 years, 20 years more than he would receive today. Second, he is
further restrained by a career offender designation, no longer applicable since Mathis v. United States, 136 s ct. 2243, 195 I. Ed.
2d 604 (2016) deemed burglary not a crime of violence. Also the sentencing commissions removal of residential burglary from
the list of crimes that lead to a career offender designation strengthens this point. Third, petitioner is moored by means of a 841
(b)(1)(c) conviction for a specified amount of (.664 milligrams) of crack cocaine (which substantiates the basis for the career
offender designation, the 924(c) conviction and a school zone enhancement). This offense has been affected by The Fair
Sentencing Act reversal of the draconian crack laws that disproportionally affected the African Americans incarcerated in this
country. This provision (The Fair Sentence Act) was made retoractive by way of the First Step Act. The First, Fourth, and the
Seventh circuits all deem 841(b)(1)(c) a "Covered Offense" For the purpose of First Step Act relief, However, the Third Circuit
disagrees. Fourth, The ground breaking descision in United States v. Rehaif, 139 c cr. 2191,2194 2200(2019) which has
invalidated petitoner's 18 U.S.C 922(G)(1) and 924 (a)(2) convctions which are predicate offenses for the stacked 924(c)s.

                                              1

TRULINCS  57447066 - WADLEY, LODISE - Unit: GIL-B-C

--------------------------------------------------------------------------------------------

Despite this strenuous predicament petitoner has reformed his mindset and priorities hopefully to place beyond dispute his rehabiliatation efforts.

Material Facts

The following facts are material to the remedy sought in this request :

1.On November 4, 2003, a Superceding indictment was returned against petitioner in the United States District Court for the Eastern District of Pennsylvania in case No. 2-03-cr-249. Through the superceding indictment petitioner was charged with violation of 21 U.S.C 841(a)(1) possession with the intent to distribute cocaine base (counts 1 and 3); 21 U.S.C 841 (a);(b)(1)(c) (distribution of a detectable amount of cocaine base:(Count 4); 21 U.S.C. 860(distribution of an possession with intent to distribute cocaine base within 1,000 feet of a school) (counts 2 and 5); 21 U.S.C 856 (a)(1) (maintaining a residence for manufacturing, distributing, and using controlled substance (count 8) ; U.S.C. 924 (c)(1) (carrying a firearm during and inrelation to a drug trafficking crime) (count 6); 18 U.S.C. 924 (C)(1) (possessing a firearm in furtherance of a drug trafficking crime)(count 9); 18 U.S.C. 922(G) (possession of a firearm by a conviceted felon) (count 7 and 10); and 18 U.S.C. 931 (possession of body armor by a convicted felon)(count 11).

2. On February 24,2004, the parties proceeded to a bifurcated jury trial. On Febuary 26, 2004, petitioner was convicted of counts 3,4,5,6,8, and 9 after completion of the first phase of the bifurcated trial. Petitioner was then convicted of counts 7,10, and 11 after completing the second phase of the bifurcated jury trial.

3. On January 20, 2005, petitioner was sentenced to the following :

| | |
|---|---|
| Count 3- 21 U.S.C 841 (a) | 262 Months |
| Count 4- 21 U.S.C 841 (a) | 262 Months |
| Count 5- 21 U.S.C 841 (a) | 262 Months |
| Count 7- 18 U.S.C 922 (g) | 120 Months |
| Count 8- 21 U.S.C 856 (a)(1) | 120 Months |
| Count 10- 18 U.S.C 922 (g) | 120 Months |
| Count 11- 18 U.S.C 931 | 36 Months |
| Count 6- 18 U.S.C 924(c)(1) | 60 Months |
| Count 9- 18 U.S.C 924(c)(1) | 300 Months |

4.The Sentence for 3,4,5,7,8,10 and 11 were ran concurrently (262 months). In accordance with 18 U.S.C. 924 (c)(1), the sentence for count 6 (60 months) and 9 (300 months), were ran consecutive to the sentences for counts 3,4,5,7,8,10,11 and each other, for a total sentence for 622 months.

5.On January 26,2005 petitioner filed a notice of appeal seeking to appeal the January 20,2005, sentence.See 2:03-cr-249(E.D. Pa) ECF nos 97,99.

6.On September 27,2006, the United States Court of Appeals for the Third Circuit affirmed Petitioner's conviction and sentence. See; 2:03-cr-249 (E.D. Pa.) ECF nos.97 99.

7.On March 26, 2007, The Supreme Court of The "United States Court, denied petitioner's petition for Writ of Certiorari Wadley v. United States, 549 U.s. 1318, 127 s. ct. 1894 (Mar. 26, 2007).

8.On April 22, 2008, Petitioner filed his first motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. 2255 in the United States District Court for the Eastern District of Pennsylvania. See 2:03-cr-249 (E.D. Pa.) ECF No. 103.

9.On October 21, 2008, Petitioner's first 2255 motion was denied by final order. See 2:03-cr-249 (E.D Pa.) ECF No. 107. Petitioner attempted to appeal the denial of his first 2255 motion, but a certificate of appealability was not issued. See 2:03-cr-244(E.D. Pa.) ECF Nos. 108,111,113.

10.On December 24,2013, Petitioner filed his second motion to vacate, set aside or correct sentence pursuant to 2255 motion in the United States District Court for The Eastern District of Pennsylvania. See 2:03-cr-249(E.D. Pa.) No. 130. On January 14,2014, Petitioner's second 2255 motion was denied by final order. See; 2:03-cr-249(E.D. Pa.) No. 131.

11.On June 29,2016, Petitioner, with the assistance of counsel filed his third motion to vacate, Set aside, or Correct sentence pursuant to 2255 motion. See 2:03-cr-249 (E.D. Pa.) ECF No. 143. Petitioner alleged that his career offender sentence should

TRULINCS  57447066 - WADLEY, LODISE - Unit: GIL-B-C

--------------------------------------------------------------------------------

be vacated pursuant to Johnson v. United States, 135 S. Ct. 2552 (2015). On August 26,2017. Petitioner's third 2255 motion was dismissed upon petitioner's voluntary notice of withdrawl. See; 2:03-cr-249 (E.D. Pa.) ECF No. 146.

## LEGAL STANDARD

The compassionate release statute permits the district Court to reduce a defendants sentence after considering the factors set forth in section 18 U.S.C. 3553 (a) to the extent that they are applicable, if it finds that... extraordinary and compelling reasons warrant such a reduction and that the reduction is consistent with applicable policy statements issued by the sentencing Commission. "18 U.S.C. 3582 (c)(1)(A) The First Step Act signifcantly expanded access to compassionate release under 18 U.S.C 3582 (c)(1)(A). Extraordinary and compelling reasons, exist where the length of the sentence being served is disproportionate and essentially different from the sentences that congress now deem appropriate today by the way of The First Step Act. See United States v. Mccoy, No. 20-6821, 2020 WL 7050097 (4th cir. Dec 2, 2020) Also see United States v Clausen, 2020 U.S. dist. Lexis 131070, 2020 WL 4260795 (E.D. Pa. July 24, 2020).

## ARGUMENT

1.THERE EXIST EXTRAORDINARY AND COMPELLING REASONS FOR COMPASSIONATE RELIEF. PRIMARILY BECAUSE OF THE DISPARITY BETWEEN PETITIONER'S 924(C) SENTENCES AND WHAT CONGRESS NOW DEEM APPROPRIATE.

Congress has spoken by way of The First Step Act eradicating the old belief that two or more 924(c) convictions in one indictment support a 25 year enhancement for each, although neither can be deemed a conviction. Many district Courts, and circuit courts of Appeal have recognized and interpreted this eradication as extraordinary and compelling reasons for compassionate release by means of 18 U.S.C. 3582 (c)(1)(A) in accordance with USSG 1B1.13, Application note 1(D) OTHER REASONS... The Courts have reconciled between the seemingly contradictory language present in the two authorities (18 3582 (c)(1)(A) and USSG 1B1.13). See; United States v. Zullo, 19-3218-cr (2nd cir. 2019); United States v. Mccoy, No. 20-6821 (4th cir. Dec 2, 2020). See also District Court decision in United States v. Urkevich, No. 8:03-cr 37, 2019WL 6037391(D Neb. Nov 14, 2019).

In applying the, "extraordinary and compelling reasons" Standard, many of these courts have appropriately considered two distinct features of a defendant's 924(c) sentences. First, is the sheer and unusal length of the sentences. Secound, these courts are considering the "gross disparity" between the old sentences and the sentences congress now believes to be an appropriate penalty for the defendant's conduct. See United States. v Adeyem, 2020 U.S. dist. LEXIS 117743,2020 WL 3642478 (E.D. Pa. July 6, 2020)

TRULINCS  57447066 - WADLEY, LODISE - Unit: GIL-B-C

-------------------------------------------------------------------------------

FROM: 57447066
TO:
SUBJECT: motion 2
DATE: 04/07/2021 07:12:28 AM

Today, petitioner's sentence would be dramatically shorter in most cases by atleast 30 years. He is now serving a 622 month sentence in part, 30 years coming by way of stacked 924(c)s and 22 consecutive years for a career offender designation (which also is no longer valid a issue that will be discussed also in this motion). The Appeals Court in Mccoy concluded that for a district court to consider the First Step Act's declaration of the appropriate level of punishment under 924(c), it should assess each defendants case on an individualized basis for compassionate release. The Court made note of the fact that there could be no error in reliance upon the length of a defendants sentence because of the dramatic degree to which they exceed what congress now deems appropriate. The stacking error that now bounds petitioner to prison for an excess of 20 years is a cricumstance which could not have been reasonably foreseen by the court at the time of the original sentencing because it was the law. Currently petitioner has served approximately 18 years, a number that would afford him immediate release based upon the current statutory law (5 years for the first 924(c) and 5 years for the second 924(c), consecutive to the career offender designation a sentence which is also no longer applicable under the law today as will be discussed later)
Because of the disparity of petitioner's sentence, and those sentenced for similar crimes after the passage of the First Step Act, along with his rehabilitation efforts this court should find extraordinary and compelling circumstances which form the basis for relief. Time served is "Sufficient, but not greater than necessary" to comply with the sentencing purposes set forth in 3553(a). Therefore, petitioner asks that this court vacate his sentence and resentence him to time serve

2.PETITIONER'S CAREER OFFENDER DESIGNATION IS NO LONGER LEGITIMATE ON ACCOUNT OF THE SUPREME COURT DECISION IN MATHIS V. UNITED STATES AND THE SENTENCING COMMISSIONS REMOVAL OF BURGLARY FROM THE LIST OF CRIMES THAT LEADS TO A CAREER OFFENDER DESIGNATION

In Mathis v. United States, 136 S. Ct. 2243, 195 L.ED.2d 604 (2016), The Supreme Court explained that a "Divisble" statute is one which lists elements in the alternative, thereby defining multiple crimes. By contrast, a statue is not divisible when it defines a single crime but lists"various factual means" by which one element may be shown.ID at 2249-50. The key to distinguishing "means" from "elements" lies in what jurors must find unanimously to convict. See Descamps, 133 S.CT. at 2288. If a particular fact or circumstance must be found unanimously, it is an element, but if not, if is merely one means of committing a single, indivisible offense. See Id; Mathis 136 S. ct. at 224,-2250; Carlos change-Cruz v. Attorney Gen. 659 F. Appx 114, 117 (3d cir. 2016) (unpublished)(The court must find whether the listed items are alternatives elements, which must be unanimously found by a jury sustain a conviction, or instead are alternative means that a jury need not unanimously find.) (internal citations and quotations omitted); United States v. Brown, 765 F.3d 185, 190-91 (3d cir. 2014) (an element is something the jury must unanimously agree on); United States v. Hinkle, 832 F.3d 569,575 (5th Cir.2016)("When a jury is not required to agree on the way that a particular requirement of an offense is met, the way of satisfying that requirement is a means of committing an offense not an element of the offense").

In the ordinary case of identifying whether a prior conviction fits the 4B1.2(a)(1) definition, a court simply asks whether the state crime has the use or threat of physical force [ against the person of another] as an element of the offense. Graves, 2016 U.S. Dist Lexis 141008, 2016 WL 5934206. *4(Citing Brown, 765 F.3d at 189; U.S. v Remoi , 404 F.3d 789, 794 (3d cir. 2005)). Quite recently in Steiner, the U.S. Supreme Court remanded a case to the Third Circuit to determine if the defendant's 1993 burglary conviction was categorically a crime of violence based on Mathis. The Steiner Court established from it's analysis that because there are alternative means to committing the core burglary element of the Pennsylvania statute, The statute is not divisible, and after Mathis a categorical approach rather than a modified categorical approach must be used. Under the categorical approach, a conviction for burglary under the Pennsylvania statute in question is not a predicate crime of violence, by means of, United States Sentencing Guidelines Manual 4b1.2

The Pennsylvania statute defined burglary as entering a building or occupied structure, or seperately secured or occupied portion there of with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter. In 18 Pa. Con. Stat. 3502(A)(1992), "Occupied Structure," as addressed in one section meant any structure, vechicle or place adapted for overnight accommodation of person, or for carrying on business therein. Whether or not a person is actually present 18 Pa. Cons. stat 3501(1992). United States v. Steiner, 847 F.3d 102 (December 30,2016). So, based upon the categorical approach the Pennsylvania Burglary statute is overly broad and doesn't qualify as a crime of violence for the purpose of a career offender designation. This is so depite the fact that Beckles upheld the vitality of the U.S.S.G defintion of Career Offender.Petitioner observes the fact that the Third Circuit does not recognize burglary convictions under Pennsylvania Law as predicate offenses for determining career offender status. See; United States V. Steiner, 847 F.3d 103, 120 (3d. cir 2017). Furthermore, the sentencing Commission has removed residential burglary from the list of crimes that lead to a career offender designation. See USSG 4b1.2(a)(2),app. C. amend 798(2016) Today, the predicate conviction would

TRULINCS 57447066 - WADLEY, LODISE - Unit: GIL-B-C

---------------------------------------------------------------------------------------------------

not be considered a crime of violence under U.S.S.C 4b1.1(a) See;  United States v. Al-Muwwakki_F.3d-,2020 U.S. App. LEXIS 40258, 2020 WL 7635764 at 9-11 (4th Cir. Dec 23,2020)(Finding defendants burglary conviction does not qualify as a violent felony under Arm Career Criminal). See also United States V. Runyon,_F.3d_2020 U.S. App. LEXIS 40259, 2020 WL 7635761 (4th Cir Dec 23, 2020)(analyzing crimes of violence under 924(c)(3))

Without the Career offender designation Petitioner's 262 month Sentence (counts 3,4,5,7,8,10, and 11) would decrease significantly. There are two scenarios to look at. First, depending on the aggregate number of Firearms petitioner's base offense level would be 22 because now there would be only one conviction for a crime of violence. He would be placed in criminal history category IV, two offenses categorized by 4A1.1(b), one categorized by 4A1.1(A)(a robbery conviction that petitioner preserves the right to challenge as a offense also categorized by 4A1.1(b) and not a crime of violence) and an additional two points because the offense was committed less than two years after his release from state custody (petitioner would also challenge this enhancement by way of United States v. Alleyne). This would amount to 8 points and petitioner would face a sentence of 63-78. Pursuant to 2k2.1(b)(5), Specific offense characteristic, 4 levels could be added (in which petitioner would also challenge) totaling an offense level of 26 and a criminal history category of IV rending a sentence of 92-115. This is the worst case scenario. The second, proper principled scenario would disqualify any base offense level determine based upon a firearm conviction because of the supreme courts decision in United States v. Rehaif, 139 S.Ct. 2191, 2194, 2200(2019), which held that the knowledge element of section 924(a)(2) required the government to show that the defendant knew not only that he possessed a firearm,but that he also belonged to the revelant category of people barred from possession one. Petitioner went to trial and had a constitutional right to be informed in the indictment of the elements of each offense he needed to defend against. His indictment did not inform him of the status element of section 924(a)(2), nor was the jurors instructed to find this element. Therefore, any sentence established upon a conviction for 922(g) and 924(a)(2) are void. That leaves a sentence based upon petitioner's 18.U.S.C 841(a);(B)(1)(C) conviction of .664 milligrams of "crack" that would start at an offense level of 12, with a criminal history category of IV, qualifying him for a sentence of 21-27 months. In either scenario when combined with the two consecutive 5 year sentences for 924(c)(1) petitioner would face no more than 235 (115 for counts 3,4,5,7,8,10 and 11, five years for conunt 6 and 5 years for count 9) months, a sentence that would make petitioner eligible for immediate release. For that reason, petitioner asks that this court vacate his sentence and resentence him to immediate release.

3. THE HIGH PROBABILITY THAT CONGRESS INTENDED RELIEF FOR LOW LEVEL DRUG OFFENDERS SUCH AS PETITIONER WARRANTS A SENTENCE REDUCTION. ESPECIALLY WHERE THE LOW LEVEL DRUG CONVICTION IS THE FOUNDATION FOR 3 MANDATORY SENTENCING ENHANCEMENTS RESULTING IN A SENTENCE 15 YEARS LONGER THAN IT WOULD BE TODAY

Section 404 of the First Step Act offers defendants convicted under 841 prior to enactment of The Fair Sentencing Act a chance to seek a retroactive reduced sentence. Nonetheless, Jurist of reason disagree as to whether 841(b)(1)(c) qualifies as a "Covered Offense". The First Circuit in United States v. Smith 954 F. 3d 446; 2020 U.S. App. LEXIS 11048, Joined by The Fourth Circuit in United States v. Woodson, 962 F.3d 812.,816-17 (4th Cir. 2020) and the Seventh Circuit in United States v. Hogsett, No.19-3465 (7th Cir. Dec 7,2020) all deem it a "Covered Offense" under the First Step Act, while the Third Circuit concludes that its not; See United States v Britt. However, The senators who wrote The First Step Act of 2018 have told the Supreme Court (In Terry V. United States, now pending on SCOTUS docket) That some lower courts are misreading it and that they did not intend to exclude low-level crack offenders from laws sentencing relief, contrary to the findings of some circuit courts across the country. The four senators who are largely responsible for the sentencing reforms in the First Step Act have filed an amicus brief in the high court supporting Terry's case. Senators Richard Durbin, D-Ill., Charles E. Grassly, R-Iowa, Cory Booker, D-N.J., and Mike Lee, R-Utah, told the justices that those provisions were instrumental to the law's passage and that congress had always meant to extend that relief to those convicted of small quantity offences. Also, President Joe Biden's acting solicitor general has changed the government's position in the Terry Case to extend sentencing relief to low-level crack offenses, even if such changes are rare in criminal cases (reported in a new law 360 piece).

In the present case petitioner was charge and convicted of 841(b)(1)(c) for .664 milligrams of "crack" cocaine, a remarkably small amount that stands as the determining starting point for three sentencing enhancement (see PSI).The first enhancement school zone stretched petitioner's statutory maximum from 20 years to 40 years. The second enhancement, Career Offender designation changed petitioner's sentencing range from 77 to 96 months to 262-327 months. At this point it is important to note that, the sentencing court relied on the firearms guideline range [2k2.1] to establish the base offense level instead of the crack guideline range which is susceptible to the Career Offender enhancement. A depreature for a Career Offender designation should have begun from the crack cocaine guideline range in 2D1.1, if the objective was to use the 841(b)(1)(c) convicion for a Career Offender enhancement. This is because 4B1.1 dictates that the instant offense be a "Drug Trafficking Crime" or "Crimes of Violence". 18 U.S.C. 922(G), the offense for which 2k2,.1 applies is neither (Drug Trafficking crime or Crime of Violence). IF the process would have begun at the appropriate guideline range of 2D1.1 the eggregious overrepresentation of petitioner's sentence would be plain and obvious. .664 milligrams of crack cocaine mandates a base offense level of 12, even under the old dragonian 100 to 1 crack cocaine, powder drug ratio.

TRULINCS 57447066 - WADLEY, LODISE - Unit: GIL-B-C

---------------------------------------------------------------------------------------------

FROM: 57447066
TO:
SUBJECT: motion 3
DATE: 04/07/2021 07:21:50 AM

The Third enhancement based upon the (.664) 841(b)(1)(c) conviction is the consecutive 5 year sentence for a 924(c)(1) conviction. It is most unlikely that congress intended to deny sentencing relief to a defendant guilty of distributing such a small quantity of crack cocaine while allowing relief for those defendants guilty of distributing much larger amounts. Especially, when this small amount is the BEDROCK for three enhanced sentences. Petitioner declares that the government would be hard press to find one case since the passage of The First Step Act where a defendant was even charged with such a dimunitive amount, let alone coupled with three enhanced sentences. The Smith court explained, the change in 841(b)(1)(c)'s upper bound is no small point, even for defendants guilty of distributing LESS THAN FIVE GRAMS of crack, because the staturoy benchmarks likely have an anchoring effect on a sentencing judge's decision making. CF. Dorsey, 567 U.S. at 267-69 (explaining how the base-offense-level quantities under U.S.S.G 2D1.1 (c) are keyed to the statutory quantities in 841(b)). Petitioner's violation, in this context, looks less insignificant and thus less worth of as long of a sentence under 841 as the statute exists now than as it did at the time of his sentencing. Under the old version of 841, 1.69 grams of crack was 34% of a quantity mandating a five year minimum. Now it is only 6% of that threshold. Id. Smith v. United States, at 446. This means that .664 milligrams would be an even lesser percentage. Hypothetically, an amount now unchargable post-First Step Act. This unique circumstance compounded with the harsh stacking of the 924(c)'s, inwhich neither was a prior conviction at the time of arrest, the disqualification of a burglary conviction that is now deemed non-violent, all amounts to cumulative collateral damage reaching the level of extraordinary and compelling reasons worthy of a sentence reduction under 18 U.S.C 3583(c)(1)(A). Therefore, petitioner asks that he be resentenced to immediate release or whatever the court deems sufficient.

4. THE UNITED STATES SUPREME COURTS DECISION IN REHAIF DISQUALIFIES PETITIONER'S 18 U.S.C. 922(G) CONVICTION LENDING ACCUMULATIVE MOMENTUM TO THE EXTRAORDINARY AND COMPELLING REASON FOR COMPASSIONATE RELEASE

The United States Supreme Courts decision in United States v. Rehaif, 139 S. Ct. 2194, 2191, 2200 (2019) announced a new rule that, narrowed the scope of the criminal statutes 922(G)(1) and 924(a)(2) by limiting their reach to people who know at the time they possess a gun, the information that makes such possession unlawful. Meaning that the government has the burden of proving that the defendant knew he belonged to a certain category of people banned from possessing firearms.

The Rehaif decision elucidates two types of errors in petitioner's case. Procedural errors in violation of the constitution and substantial errors in violation of fundamental principles of law. As for the procedural error, petitioner proceeded to trial, therefore the constitution guarantee's safegaurds essential to the protection of certain rights. Specifically, the fifth and sixth Amendment. These rights must be protected at every stage of a criminal proceeding. The fifth Amendment requires a grand-jury indictment for infamous crimes (U.S. Const. Amend. 5) and the sixth amendment insists upon notice to the defendant of the "Nature and cause of the accusation", [U.S. Const. Amend. 6]. Petitioner's indictment was devoid of the status element, nor did the government present any evidence at trial for knowledge of status, and finally the juror's were not instructed that they had to find this element to convict, the jurors were actually told that they did not have to find this element. In accordance with these guarantees, The Supreme Court has instructed that an indictment must contain all the elements of the charged offense to ensure that a grand jury found them present and to "Fairly inform a defendant of the charge against which he must defend" as well as, "enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Alleyne v. United States 570 U.S. 99, 133 S. Ct. 2151, 2160 186 l. Ed. 2d. 314 (2013); Hamling v. United States, 418 U.S. 87, 117, 94, S. Ct. 2887, 41 L. Ed. 2d 590 (1974); See also Russell v. United States, 369 U.S. 749, 768-70, 82 S. Ct. 1038, 8 L.Ed. 2d. 240 (1962).

In other words, an indictment is only facially sufficient if it (1) contains the elements of the offense intended to be charged (2) sufficiently appraises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution. United States v. Huet, 665 F. 3d 588, 595 (3rd cir. 2012). It is well established that, " a defendant may contend that an indictment is insufficient on the basis that it does not satisfy the first requirement in that it fails to charge an essential element of the crime". United States v. Stock, 728 F.3d 287,292 (3rd. Cir. 2013). Petitioner's indictment failed to charge the status element therefore the convictions of count seven and ten are void.

2. SUBSTANTIVE COMPONENT

In Montgomery v. Louisiana, no. 14-230 (Jan 25,2016), The Supreme Court establishes that a procedural and substantive component may exist in a given, new constitutional holding. More important, the Court stated : " A conviction and sentence imposed in violation of a substantive rule is not just erroneous but contrary to law and as a result, void. It follows, as a general principle, that a court has no authority to leave in place a conviction or sentence that violates a substantive rule, regardless of

TRULINCS 57447066 - WADLEY, LODISE - Unit: GIL-B-C

------------------------------------------------------------------------------------------------

whether the conviction or sentence became final before the law was held unconstitutional. There is no grand father clause that permits states to enforce punishment the constitution forbids, to conclude otherwise would undercut the constitution's substantive guarantee so, a new rule is substantive when it narrows the scope of a criminal statute, rendering non-criminal the conduct of which a person was convicted. The Rehaif ruling narrowed the scope of 18 U.S.C. 922(G)(1) and 924(a)(2), as a result rendered petitioner's conduct non-criminal.

### B. REHAIF'S RULING IS WHAT 922(G)& 924(A)(2) HAVE ALWAYS MEANT

On account of the fact that the ruling in Rehaif is what 922(G)& 924(a)(2) has always meant, it stands as the authoritative view for dealing with past decisions that are contrary to it. See; Rivers v. Roundway exp. Inc., 511 U.S. 298, 313 n.12 (1994), See also id. ("when this court construes a statute, it is explaining its understanding of what the statute has meant continously since the date when it became law. Thus, it is not accurate to say that the court's decision in [Rehaif] 'changed' the law... rather, given the structure of our judicial system the [Rehaif] opinon finally decided what [922(G)&924(a)(2)] had always meant and explained why the Court of Appeal had misinterpreted the will of the enacting congress.") id. at 312-13 ("A judicial construction of a statute is an authoritative statement of what the statute means before as well as after the decision of the case giving rise to that construction."). For that reason, the Rehaif ruling is commanding, true, and a fundamental legal decision that affords a defendant such as petitioner the opportunity to have his 922(G)&924(a)(2) charges vacated (counts 7 and 10) and remanded. In United States V. Malik Nasir, 982 f.3d144 (3rd Cir. Dec 1, 2020 En Banc), The Third Circuit En Banc concluded that proving that a felon knew he possessed a gun remains necessary but is no longer sufficient for a conviction. Proof of knowledge of status is now essential. This Rehaif issue lends credence to the unique circumstances of accumulative errors that reaches the objectionable level for compassionate release based upon extraordinary and compelling reasons. Therefore, petitioner asks that his motion be granted and that his sentence be reduced to immediate release.

### 5. A REDUCTION IN PETITIONER'S SENTENCE WOULD BE CONSISTENT WITH THE FACTORS SET FORTH IN 18 U.S.C. 3553 (A) AND HE IS NOT A DANGER TO THE SAFETY OF ANY OTHER PERSON OR TO THE COMMUNITY

With respect to 3553(a) factors, petitioner argues that the Covid-19 pandemic has subject him to a more punitive sentence than need be. As inmates like himself faces "Lock down conditions, cold meals, and drastically reduced recreational time, programming, and employment and educational opportunities, all ongoing until this day. As part of the 3553(a) analysis, many judges in this district as well as others have considered a change in the penalties that a defendant would face if prosecruted today. For instance, Judge Bennett, a district Judge sitting for a district court in the Fourth Circuit explained: "Change in the sentencing law landscape are relevant to the courts analysis of whether the court's sentence appropriately address the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offence, deter crime, and protect the public." United States v. Johnson, No. RDB-07-0153, ECF No.183 at 10-11, 2020 U.S. Dist. LEXIS 190921 (D. md Oct 14, 2020); see also Mccoy, 2020 U.S. app. LEXIS 37661, 2020 WL 7050097 at *11 ( concluding with respect for a motion for Compassionate release, that a court may consider the impact of a legislative changes in sentencing under 18 U.S.C. 924(c) evn if the sentence would not be reduced pursuant to a retroactive application of the amended 924(c)).

Further, Petition argues, that his sentence is not only out of step with current crack cocaine drug laws, 924(c) stacking, Rehaif, The Career Criminal requirements but also, The National and District-wide trends for defendants, who, unlike petitioner were convicted of murder. See United States v. Bryant, 95-202-cc-3-2020 U.S. Dist. LEXIS 75681, 2020 WL 2085471 at *5. n.8 (D Md Apr. 30,2020)(According to statistics released by the United States Sentencing Commission for fiscal year 2018, the national average sentence for murder was 291 months)(citing Redd 444 F. Supp. 3d 717,728 (E.D. VA. 2020).

### A. REHABILITATION

Evidence of post-sentence rehabilitation is likely the most critical of core considerations for the court in a 3582(c) proceeding. In Pepper v. United States, 562 U.S. 476, 131 S. Ct. 1229, 1241, 179 L. Ed. 2d 196 (2011), the court emphasized the important nature of Post Sentence Rehabilitation, stating: "there would seem to be no better evidence than a defendants post incarceration conduct." Id. Indeed, the court continued---" post sentence rehabilitation may also critically inform a sentencing judge's overarching duty under 3553(a) to "impose a sentence sufficient, but not greater than necessary to comply with the sentencing puposes set forth in 3553(a)" Id. at 1242

Petitioner's rehabilitation efforts have been constant and efficient despite the pratically life sentence he is serving. He has completed the Challenge Program with good reviews and evaluations from the Doctor and treatment specialist. He has completed the Faith based Threshold program held by religious services. He has also completed programs such as, Anger Management, Stop the Violence, Positive and Negative Awareness Group, Victim Impact Group, The Choice & Change Drug Education program and many more. Despite that, Petitioner has also completed career driven and opportunity positioning achivements, such as, attainment of diploma's in both Criminal Law and as a paralegal, awarded by BlackStone Career

TRULINCS  57447066 - WADLEY, LODISE - Unit: GIL-B-C

--------------------------------------------------------------------------------

Institute, Software Specialty Training awarded by Mountain Empire Community College in Virginia. Petitioner has vocational training in three different areas : Custodial Maintenance from TPC training systems, Major Appliance Repairs, and a Universal Certification for handling refrigerants as required by ESCO Institute and other H-Vac certificates. Most important, petitioner is currently enrolled at Glenville State College here at Gilmer FCI. At this point, petitioner has a total of 66 combined (40 transferred) credits on course to obtaining a bachelor degree in Business.

TRULINCS  57447066 - WADLEY, LODISE - Unit: GIL-B-C

--------------------------------------------------------------------------------

FROM: 57447066
TO:
SUBJECT: motion 4
DATE: 04/07/2021 07:22:29 AM

Based upon the particular circumstance in this case, the court should conclude that the time which petitioner has already
served is sufficient to satisfy the purposes of sentencing. The overriding factor's under 3553(a) that were not present at the time
of sentencing are the disparties between the sentences petitioner received in contrast to the sentences for the same crimes that
a defendant in petitioner's situation would receive today and what congress now deems unwarranted. Petitioner's rehabilitation
in prison combined with the other factors and circumstances surrounding the changes in laws for which petitioner was convicted
all suggest that he poses no risk to public safety upon release. Petitioner has no violence in his case, has not had an instituinal
infraction in over 9 years. Maintains steady employment while in prison, has consistantly paid down his FRP payment, have a
loving family eager, willing, and ready to help him make a successful transition back into society. Therefore, Petitioner asks that
his motion be granted and that he receive immediate release.

CONCLUSION

The sentence petitioner serves today is grossly disproportionate to what congress, The Sentencing Commission, and the newly
expressed Supreme Court decisions deem appropriate to promote Fairness, Justice and respect for our Judicial system. The
combination of five factors cumulatively provides a persuasive argument for extraordinary and compelling reasons for
compassionate relief. Petitioner serves a sentence today that many jurist deemed unwarranted even under the old laws. The
need to avoid unwarranted sentencing disparties is a main concern of our judicial system. Today, many other similarly situated
defendants are receiving reduce sentences pursuant to the changes made by the First Step Act. Based upon what proceeds
petitioner asks this court to vacate his sentence and resentence him to time serve or whatever this court deems appropriate
and/ or appointment of counsel if it is deemed neccesary.

Sincerely Submitted,

LODISE WADLEY 57447-066
Pro Se , FCI Gilmer
P.O. Box 6000
Glenville, WV 26351

CERTIFICATE OF SERVICE

I Hereby certify that on ___April 8, 2021_____ I send the forgoing Motion pursuant to 18 U.S.C 3582(c)(1)(A), by the United
States Postal Service to the Clerk of Court for the Eastern District of Pennsylvania. Under the prison mail-box rule, a motion or
petition is deemed filed on the date that it is handed to prison authorities for mailing. See, Houston v. Lack, 487 U.S. 266, 276,
108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988).

Clerk of Court for :
U.S. District Court
Eastern District of Pennsylvania
601 Market St. Room 2609
Phila, Pa. 19106-1729

By: _____

LODISE WADLEY 57447-066
Pro se, FCI Gilmer
P.O. Box 6000
Glenville, WV 26351

APPENDIX TO MOTION FOR COMPASSIONATE RELEASE BASE UPON EXTRAORDINARY AND COMPELLING REASONS PURSUANT TO 3582(c)(1)(A)(i)

Apendix A: Certificates and diplomas

Appendix B: Evaluation and reports From the Doctors and treatment specialist from the challenge Program

Appendix C: Letters of Support From family, and friends

Appendix D: Proof of statutory exhaustion requirement

# APPENDIX : A

## CERTIFICATES AND DIPLOMA'S

# BLACKSTONE CAREER INSTITUTE

1011 BROOKSIDE ROAD, SUITE 300, P.O. BOX 3717, ALLENTOWN, PA 18106-3717

January 13, 2015

Lodise Wadley  57447-066
U.S.P. Big Sandy
PO Box 2068
Inez KY  41224

Dear Lodise:

CONGRATULATIONS!  All of us at Blackstone Career Institute are proud to count you among our graduates.  We are pleased we could be part of your education and hope your time with us so far has been rewarding.  You certainly should be proud of your accomplishment.

As the Director, I know that you have worked hard and made some personal sacrifices to complete this course.  It indicates to me that you are committed to your studies and realize the role educational training can play in attaining your goals.

Our staff is genuinely interested in our students' success.  We appreciate when a graduate writes to let us know they are utilizing their educational training while working in their chosen profession.  As part of our continuing efforts to enhance the standing of Blackstone Career Institute as an important resource for quality education, we seek your insight into how we can improve our course.  If you have not completed the Student Satisfaction Survey I would encourage you to do so.

Included in your graduation packet you should find your certificate for the Blackstone Career Institute program completed along with your official school transcript.

Most of our graduates continue their quest for knowledge as life long learners by taking additional courses from Blackstone. Please see the enclosed offer outlining these courses and the special discount only for our graduates!

Again, congratulations on your completion and best wishes in all your future endeavors.

Sincerely,

Kevin J McCloskey
Director

# BLACKSTONE CAREER INSTITUTE

1011 BROOKSIDE ROAD, SUITE 300, P.O. BOX 3717, ALLENTOWN, PA 18106-3717

## Student Transcript

## 31 Lesson Paralegal Studies Certificate Program

915 Clock Hours

**Student:** Lodise Wadley 57447-066
**Address:** U.S.P. Big Sandy
PO Box 2068
Inez KY 41224

**Student Number:** 08028960
**Enrollment Date:** 07/23/2013
**Completion Date:** 07/01/2014

| Text/Subject | Date Completed | Grade | Text/Subject | Date Completed | Grade |
|---|---|---|---|---|---|
| **Lesson: 1** | | | **Lesson: 7** | | |
| • Introduction To Law | 08/28/2013 | 100 | • Trusts | 01/24/2014 | 100 |
| • Contracts Part I | 08/28/2013 | 100 | **Lesson: 8** | | |
| • Contracts Part II | 08/28/2013 | 100 | • Law of Private Corporations | 01/30/2014 | 100 |
| • Contracts Part III | 08/28/2013 | 100 | • Law of Partnerships Part I | 01/30/2014 | 95 |
| **Lesson: 2** | | | • Law of Partnerships Part II | 01/30/2014 | 100 |
| • Law of Torts Part I | 10/04/2013 | 100 | **Lesson: 9** | | |
| • Law of Torts Part II | 10/08/2013 | 100 | • Constitutional Law Part I | 02/14/2014 | 95 |
| • Law of Torts Part III | 10/16/2013 | 100 | • Cotitutional Law Part II | 02/14/2014 | 100 |
| • Law of Torts Part IV | 10/16/2013 | 100 | **Lesson: 10** | | |
| **Lesson: 3** | | | • Constitutional Law Part III | 02/14/2014 | 100 |
| • Criminal Law Part I | 10/21/2013 | 95 | **Lesson: 11** | | |
| • Criminal Law Part II | 10/21/2013 | 100 | • Legal Research Part I | 02/24/2014 | 95 |
| **Lesson: 4** | | | **Lesson: 12** | | |
| • Real Property Part I | 10/28/2013 | 100 | • Legal Research Part II | 06/13/2014 | 95 |
| • Real Property Part II | 10/28/2013 | 100 | **Lesson: 13** | | |
| **Lesson: 5** | | | • Employability Skills | 06/30/2014 | 100 |
| • Real Property Part III | 11/07/2013 | 100 | **Lesson: 14** | | |
| • Real Property Part IV | 11/07/2013 | 95 | • Ethics | 06/30/2014 | 100 |
| **Lesson: 6** | | | | | |
| • Pleadings in Civil Action Part I | 11/21/2013 | 100 | | | |
| • Pleadings in Civil Action Part II | 11/21/2013 | 100 | | | |
| • Practice in Civil Actions | 11/21/2013 | 95 | | | |
| • Criminal Procedure | 11/21/2013 | 95 | | | |
| **Lesson: 7** | | | | | |
| • Wills Part I | 01/24/2014 | 100 | | | |
| • Wills Part II | 01/24/2014 | 95 | | | |

**Student Average:** 98.54%   ** FINAL **

This Document Issued: 07/01/2014

**Blackstone Career Institute**

By: *Valerie L. Behrle* B.S., M.Ed.
Registrar





# Blackstone Career Institute

Est. 1890

## Awards this Certificate in

### Criminal Law

upon

## Louise Wadley

who has fulfilled all the requirements prescribed by the School and is entitled
to all of the honors, rights and privileges thereunto appertaining.
In Testimony Whereof this recognition of achievement is

## Given this 13th day of January 2015

_President_

_Valerie L. Eihsle B.S., M.Ed._
_Director of Education_

# BLACKSTONE CAREER INSTITUTE

1011 BROOKSIDE ROAD, SUITE 300, P.O. BOX 3717, ALLENTOWN, PA 18106-3717

## Student Transcript
## Criminal Law Certificate course

**Student:** Louise Wadley, 57447-066
**Address:** U.S.P. Big Sandy
PO Box 2068
Inez, KY 41224

**Student Number:** 87028960
**Enrollment Date:** 11/12/2014
**Completion Date:** 01/13/2015

| Text/Subject | Date Completed | Grade |
|---|---|---|
| Lesson: 1 | | |
| • CRIMINAL LAW EXAM #1 | 12/16/2014 | 100 |
| The Criminal Justice System | | |
| Basic Principles of Criminal Law | | |
| • CRIMINAL LAW EXAM #2 | 12/16/2014 | 95 |
| Types of Offenses | | |
| Investigation of Criminal Behavior | | |
| • CRIMINAL LAW EXAM #3 | 12/16/2014 | 100 |
| The Prosecutor's Role in Initiating | | |
| Defending the Accused | | |
| • CRIMINAL LAW EXAM #4 | 01/13/2015 | 100 |
| Discovery and Disclosure | | |
| Legal Defenses | | |
| • CRIMINAL LAW EXAM #5 | 01/13/2015 | 100 |
| The Nature of Criminal Trials | | |
| Preparation for the Trial | | |
| • CRIMINAL LAW EXAM #6 | 01/13/2015 | 100 |
| Sentencing | | |
| Appeals | | |

**Student Average:** 99.16%     ** FINAL **

This Document Issued: 01/13/2015

**Blackstone Career Institute**

By *Valerie L. Behrle* B.S., M.Ed.
Registrar

DLS
A Direct Learning Systems School

Phone:  610-871-0031 • 800-826-9228 • Fax:  610-871-0034
email: info@blackstone.edu • www.blackstone.edu

# Certificate of Transition

*awarded to:*

## Lodise Wadley

*for completing all the requirements of the*

### CHALLENGE PROGRAM

*FCC Coleman – U.S.P. I, Florida*

Completed February 13, 2019

"WE CHALLENGE OURSELVES TO CHANGE!"



Dr. S. Sinis
Challenge Program Coordinator
Psychology Services

Virginia's
Community Colleges
Workforce Development



# CERTIFICATE OF COMPLETION

**BUSC 1595**

*Software Specialty Training*

This is to certify that

## LODISE WADLEY

has completed

The *Software Specialty Training Program*
an approved **Continuing Education Unit (CEU) Program**
sponsored by the **Center for Workforce Development**
at Mountain Empire Community College.

Lance Cole, USP Lee/Director of Education

Mitzi Williams, MECC/Workforce Development

Completion Date: *August 26, 2010*
Hours Completed: *90 hours*
CEUs Awarded: *9.0*

CENTER
WORKFORCE
DEVELOPMENT
MOUNTAIN EMPIRE COMMUNITY COLLEGE

# TPC Training Systems

Upon the recommendation of
**FCC Coleman U.S.P. 1**
Vocational Training

**Lodise Wadley**

is awarded this
**Certificate**

for successfully completing the
prescribed course of study in
**Custodial Maintenance**

Awarded this twentieth day of January
Two thousand and seventeen

FCC Coleman U.S.P. 1

TPC Training Systems



# Certificate of Achievement

to proclaim:

## LODISE WADLEY
### 57447-066

has successfully completed the
Choice & Change Drug Education Program
at USP Lee, Virginia



_M. Williams, M.A._

M. Williams, M.A.
Drug Treatment Specialist

_March 1, 2007_

Date

# Certificate of Completion

This certifies that

## LODISE WADLEY
### Register #: 57447-066

has successfully completed

# STOP THE VIOLENCE PROGRAM

at USP Big Sandy

OCTOBER 08 , 2014



M. HAMILTON, STVP COUNSELOR



# UNITED STATES PENITENTIARY BIG
## SANDY, INEZ, KENTUCKY

THIS CERTIFIES THAT

*Ladise Wadley*

has successfully completed the required course of study for the
Positive and Negative Awareness Group

Given this 29 day of May, 2014

C Unit Manager

Associate Warden of Programs

# UNITED STATES PENITENTIARY BIG SANDY, INEZ, KENTUCKY

THIS CERTIFIES THAT

## Ladise Wadley

has successfully completed the required course of study for the

Victim Impact Group

Given this 05 day of November, 2014



C Unit Counselor



Associate Warden of Programs

# esco institute   PO Box 521 • Mount Prospect IL • 60056

Enclosed are the results of your EPA Section 608 Certification examination. A passing score of 70% or greater is required in each section. Additionally, you must pass the Core plus another section in order to be issued a certification. The scores of your exam are listed on the right and your certification card is attached.

Please visit our website at www.escogroup.org for additional training resources or contact us at 1-800-726-9696 with any questions!

Mail to: FCI Gilmer
Todd Biller - Education Dept
PO Box 5000
Glenville, WV, 26351

Visit www.escogroup.org to update your address or to replace a lost card. Please maintain this document for your records as it contains your certification number. See reverse side for more information.

Scores:

Core: 100%   Type-I: 96%   Type-II: 96%   Type-III: 92%

Exam Participant: LODISE WADLEY  ID#: 106337649020220

Certificate No.: 106337649020220

LODISE WADLEY

UNIVERSAL

has successfully passed a

exam on how to responsibly handle refrigerants as required by EPA's National Recycling and Emission Reduction Program



esco institute
Program EPA
Approved
December 28, 1993

WWW.ESCOGROUP.ORG   (800)726-9696



# THRESHOLD

## Certificate of Completion

Awarded to

## LODISE WADLEY

for completing all the requirements of the
**Faith-based Re-entry Program** *THRESHOLD*
Federal Correctional Complex, Coleman, FL

D. Talbot, Coordinator

# CONGRATULATIONS

By successfully completing all the required course work and training for

## LOUISE WADLEY

### Major Appliance Repair

**August 1, 2014**

**CONTINUED SUCCESS!**

G. Bracie, S.O.E.

V. Jordan, VT Instructor

# DIPLOMA

## Commonwealth of Pennsylvania
## Department of Education

In recognition of having met requirements for high school completion in accordance with the Act of the General Assembly Number 212 approved May 15, 1945, this diploma is conferred upon

**LODISE WADLEY**

Date Issued _____ 02/27/97



Given under the seal of the Department of Education Commonwealth of Pennsylvania at Harrisburg

Eugene W. Hickok
Secretary of Education

Diploma Number
0580011

PDE-101 (5/89)



COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF EDUCATION
333 MARKET STREET
HARRISBURG, PA 17126-0333

DATE: 11/20/2015
GED ID (Last 4 Digits): 0011
DATE OF BIRTH: 12/20/1974

LODISE    WADLEY
PO BOX 2068
INEZ KY 41224

DEAR LODISE

The Following is an OFFICIAL TRANSCRIPT of your scores on the General Educational Development (GED®) Test.

| Test | Form | Standard Score | Percentile Rank for U.S | Subject |
|------|------|----------------|-------------------------|---------|
| Test# 1 | AT | 42 | 22 | Writing Skills |
| Test# 2 | AT | 50 | 55 | Social Studies |
| Test# 3 | AT | 49 | 49 | Science |
| Test# 4 | AT | 47 | 41 | Reading Skills |
| Test# 5 | AT | 48 | 36 | Mathematics |

Total: 236

Standard Score Average: 47

Date of LastTest:    02/10/1997

STATUS: PASSED
Commonwealth Secondary School Diploma #0580011 issued on 02/27/1997.
The Commonwealth Secondary School Diploma program required a minimum total score of 225, minimum average score of 45, and no single test score less than 40.  The best scores from each test are used to determine eligibility for a diploma.

DUPLICATE DIPLOMAS ARE NOT ISSUED.

If you have any questions, please direct them to:

COMMONWEALTH DIPLOMA PROGRAM
PENNSYLVANIA DEPARTMENT OF EDUCATION
333 MARKET STREET, 12th FLOOR
HARRISBURG, PA 17126-0333
TELEPHONE 717-787-5532

# Certificate of Achievement

United States Penitentiary Lee County certifies that

## Lodise Wadley

has completed five or more Adult Continuing Education classes within the last year and is hereby awarded this certificate.

Given at USP Lee County, Virginia,
this 26th day of October 2006.

T.W. Miller, Supervisor of Education

Terry O'Brien, Warden



Certificate of Achievement

This certificate is awarded to

Lodise Wadley

in recognition of completing training in Microsoft Office 2007,
Computer Applications Program through Mountain Empire Community College.

Given at USP Lee, Virginia, this 7th day of December 2010.

Lance Cole, Supervisor of Education

Hardy Chain, Associate Warden (1 & E)

C. Zych, Warden

# ADAMS STATE UNIVERSITY
### COLORADO
*Great Stories Begin Here*

OFFICE OF THE REGISTRAR
OFFICIAL ACADEMIC TRANSCRIPT
Date of Birth: 20-DEC

SSN: ***-**-8450

Date Issued: 09-SEP-2019

Page: 1

Record of: Lodise Wadley, Jr
#57447-066
FCI Gilmer
PO Box 6000
Glenville, WV 26351

Issued To: Lodise Wadley
57447-066
FCI Gilmer
Glenville, WV 26351

Course Level: Undergraduate

| ***************** TRANSCRIPT TOTALS ***************** | | | |
| --- | --- | --- | --- |
| | Earned Hrs | GPA-Hrs | Points | GPA |
| TOTAL INSTITUTION | 9.00 | 9.00 | 30.00 | 3.33 |
| TOTAL TRANSFER | 40.00 | 0.00 | 0.00 | 0.00 |
| OVERALL | 49.00 | 9.00 | 30.00 | 3.33 |
| ********************* END OF TRANSCRIPT ********************* | | | |

| SUBJ NO. | COURSE TITLE | CRED GRD | PTS R |
| --- | --- | --- | --- |

TRANSFER CREDIT ACCEPTED BY THE INSTITUTION:

FA13-SP15       Blackstone Career Inst-Allento
Ehrs: 40.00 GPA-Hrs: 0.00 QPts: 0.00 GPA: 0.00

INSTITUTION CREDIT:

Spring 2016
SOC 201    Soc Imagination GT-SS3    3.00 B    9.00
Ehrs: 3.00 GPA-Hrs: 3.00    QPts: 9.00 GPA: 3.00

Summer 2017
HGP 110    Development of Civ GT-H1    3.00 B    9.00
Ehrs: 3.00 GPA-Hrs: 3.00    QPts: 9.00 GPA: 3.00

Fall 2018
AR 103    Art Appreciation GT-AH1    3.00 A    12.00
Ehrs: 3.00 GPA-Hrs: 3.00    QPts: 12.00 GPA: 4.00
*************** CONTINUED ON NEXT COLUMN

AN OFFICIAL SIGNATURE IS WHITE WITH A GREEN BACKGROUND     REJECT DOCUMENT IF SIGNATURE BELOW IS DISTORTED

This officially sealed and signed transcript is printed on green
SCRIP-SAFE® security paper with the name of the university
printed in white type across the face of the document. A
raised seal is not required. When photocopied the word
COPY should appear. A BLACK ON WHITE OR A COLOR
COPY SHOULD NOT BE ACCEPTED.

M. Belén García, Registrar



# APPENDIX : B

EVALUATION AND REPORTS FROM THE DOCTORS
AND TREATMENT SPECIALIST FROM THE
CHALLENGE PROGRAM

## Bureau of Prisons
## Psychology Services
## Challenge Program

**SENSITIVE BUT UNCLASSIFIED**

| | | | |
|---|---|---|---|
| **Inmate Name:** WADLEY, LODISE | | | **Reg #:** 57447-066 |
| **Date of Birth:** 12/20/1974 | **Sex:** M | **Race:** BLACK | **Facility:** COP |
| **Open Date:** 10/04/2016 | **Closed Date:** | **Status:** Active | **Discussed:** Yes |

**PGI Title:** Overall Progress

**Status:** Active          **Last Updated:** 01/18/2019     **Last Provider:** Garcia-Hernandez, Ariel CTS

**Problem:**      I have led a disordered lifestyle that has had a negative impact on many aspects of my life so I have volunteered to participate in this residential treatment program to help me address my specific problems.

**Goal:**      Incorporate the principles and techniques of this treatment program to address my thinking errors and modify my problematic behaviors.

**Interventions:** Full program participation as directed and reviewed by my clinical team due by 1/20/2019.

**Progress Notes:**

Understands concepts and demonstrates behavior(s)     Date: 01/18/2019   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was interviewed today for his 60 Day Review. He is in the Transition Phase and currently in the Transition Journal. This group review skills learned during the Challenge Program and how they may be used after completion. Participants examine three key transitional issues, including working with authority figures, handling social pressure, and reconnecting with family. Inmate has demonstrated an understanding and application of the concepts/material. His behavior remains consistent with the Eight Attitudes of Change. He provides useful feedback to others, models appropriate behavior, and serves as a positive role model. For example, Inmate Wadley continues adhering to the Attitudes of Change as shown by continuing assisting his peers in RSA's and memorization of Challenge definitions. He receives good work reports and the community sees him as a responsible community member who is willing to be helpful all the time. Regarding his treatment goals, he has improved in how he deals with disagreements, improved his communication skills, made realistic future plans, and has learned how to keep his options open as a way of ensuring a drug-free lifestyle. Due by 3/21/2019.

Understands concepts and demonstrates behavior(s)     Date: 11/16/2018   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was interviewed today for his 60 Day Review. He is in the Transition Phase and currently in the Transition Journal. This group review skills learned during the Challenge Program and how they may be used after completion. Participants examine three key transitional issues, including working with authority figures, handling social pressure, and reconnecting with family. Inmate has demonstrated an understanding and application of the concepts/material. His behavior remains consistent with the Eight Attitudes of Change. He is timely to groups/meetings, he is polite, gets along well with his peers/staff, and is adhering well to the Eight Attitudes of Change. He has not received any attitude checks, negative Teamings, disciplinary reports, or positive urinalysis during this 60 day period He is scheduled to complete this program within the next month. Overall, his progress is considered to be good. Due by 1/20/2019.

Understands concepts and demonstrates behavior(s)     Date: 09/20/2018   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was interviewed today for his 60 Day Review. He is in the Transition Phase and currently in the Recovery Maintenance Journal. He is scheduled to complete this program within the next month. This is likely his last 60 Day Review. Inmate Wadley continues making good progress toward his treatment goals. He provides useful feedback to others, models appropriate behavior, and serves as a positive role model. He continues helping others understand the positive values in the context of their religion and assisting his peers in RSA's and memorization of Challenge definitions. He has not received any incident reports, attitude checks, or positive urinalysis in the past 60 day period. He receives good work reports and the community sees him as a responsible community member who is willing to be helpful all the time. He will be working on identifying obstacles to his continued success. Due by 11/21/2018.

Understands concepts and demonstrates behavior(s)     Date: 07/18/2018   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

A 60-day progress review was conducted on inmate Wadley. Inmate was provided a copy of his Treatment Plan Review to ensure that he is able to track his progress and will be advised of any additional treatment activities. Inmate Wadley is in Phase III currently in the Lifestyle Balance Journal. He continues making good progress toward

| Inmate Name: | WADLEY, LODISE | | | Reg #: 57447-066 |
|---|---|---|---|---|

Inmate Name: WADLEY, LODISE
Date of Birth: 12/20/1974   Sex: M                Race: BLACK
Open Date: 10/04/2016   Closed Date:        Status: Active
Reg #: 57447-066
Facility: COP
Discussed: Yes

his treatment goals. He provides useful feedback to others, models appropriate behavior, and serves as a positive role model. He continues helping others understand the positive values in the context of their religion and assisting his peers in RSA's and memorization of Challenge definitions. He has not received any incident reports, attitude checks, or positive urinalysis in the past 60 day period. It is assessed he is working sincerely on his treatment activities and learning Program information. Due to institutional disrupted schedule and to an extensive lockdown, inmate will have additional time to work with the activities in this treatment plan. Overall, his current progress is positive. Due by 9/21/2018.

Understands concepts and demonstrates behavior(s)        Date: 05/17/2018   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was seen for his ninth 60 Day Review. Inmate was provided a copy of this treatment progress review. He is in Phase III of the program and currently in the Lifestyle Balance Journal. He continues making positive progress towards his treatment goals and has become an important and contributing member of the treatment community. He provides useful feedback to others, models appropriate behavior, and serves as a positive role model. He continues helping others understand the positive values in the context of their religion (Muslim), and assisting his peers in RSA's and memorization of Challenge definitions. He has not received any incident reports, attitude checks, or positive urinalysis in the past 60 day period. It is assessed he is working sincerely on his treatment activities and learning Program information. Overall, his current progress is good. Due by 7/24/2018.

Understands concepts and demonstrates behavior(s)        Date: 03/26/2018   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was seen for his ninth 60 Day Review. Inmate was provided a copy of this treatment progress review. He is currently in the Phase Two in the Communication Skills Journal. He continues making good progress toward his treatment goals. He has demonstrated a solid adherence to the program's rules and traditions by the following attitude willingness, humility, and caring by being timely, well dressed/groomed, and relating to others in the program in a polite and congenial manner. He receives good work reports. He stated "I am proud of myself the way I am practicing the Eight Positive Attitudes of Change in the treatment community. He continues helping others understand the positive values in the context of their religion (Muslim), and assisting his peers in RSA's and memorization of Challenge definitions. He has not received any incident reports, attitude checks, or positive urinalysis in the past 60 day period. It is assessed he is working sincerely on his treatment activities and learning Program information. Overall, his current progress is good. Due by 5/27/2018.

Understands concepts and demonstrates behavior(s)        Date: 01/19/2018   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was seen for his eighth 60 Day Review. Inmate was provided a copy of this treatment progress review. He is in Phase Two of the program and currently in the Violence Prevention Journal. He has been making good progress toward his treatment goals. For example, he masters the RSAs, he has become a better listener and more open-minded, he is more rational and is seeking different ways seeing situations less awfully, has no cravings for drugs, and has been engaging in healthy/voluntary activities. He provides positive feedback and critical feedback to others. He is timely, well-dressed, and affable. He has a good attitude by demonstrating willingness, caring, and responsibility on a daily basis. On 11/29/2017 Inmate Wadley was teamed to be recognized for his positive program progress and implementing the positive values into his every day behavior. Furthermore, he has been seen by staff helping others understand the positive values in the context of their religion (Muslim). Per staff, inmate continues to present as a positive role model in the unit and has internalized many of the concepts of the program. He continues participating in his process group, service group, seminars and community morning meetings. Inmate Wadley continues adhering to the Attitudes of Change as shown by assisting his peers in RSA's and memorization of Challenge definitions. He receives good work reports. Overall, his progress is good. Due by 3/28/2018.

Understands concepts and demonstrates behavior(s)        Date: 11/20/2017   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was seen for his seventh 60 Day Review. Inmate was provided a copy of this treatment progress review. He is in Phase Two of the program and currently in the Criminal Lifestyle Journal to ensure that he is able to track his progress and will be advised of any additional treatment activities. Inmate continues participating in his process group, service group, seminars and community morning meetings. Observations of him reveal that he adheres to the Attitudes of Change on a daily basis by demonstrating responsibility, willingness, and caring. He is timely to groups and participates regularly. He voluntarily participates in the community meeting by providing feedback to others. He stated he is working on being humble and he demonstrates this daily by the gentle manner in which he relates to others which does not include boastfulness. Inmate Wadley is working as a main corridor orderly

| Inmate Name: | WADLEY, LODISE | | | Reg #: | 57447-066 |
| Date of Birth: | 12/20/1974 | Sex: | M | Race: BLACK | Facility: COP |
| Open Date: | 10/04/2016 | Closed Date: | | Status: Active | Discussed: Yes |

his detail supervisor provided a favorable report on his work performance. He has not received any attitude checks, negative teaming's, disciplinary reports, or positive urinalysis during this period. Overall, his current progress is good. Due: This activity will be reevaluated by 1/27/2018.

Understands concepts and demonstrates behavior(s)     **Date:** 09/18/2017   **Provider:** Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was seen for his fifth 60 Day Review. Inmate was provided with a copy of this treatment progress review. He is currently in Phase II in the Reviewing My Drug Use Journal. Inmate has demonstrated an understanding and application of the concepts/material. He has been making good progress toward his treatment goals. For example, he has learned to cope with insults and uncomfortable situations by using RSAs, he has become a better listener, and more open-minded, he blames less and is seeking different ways seeing situations less awfully, has no cravings for drugs, and has been engaging in healthy/voluntary activities. He provides positive feedback and critical feedback to others. He has not received an attitude check, negative teaming, disciplinary report, or positive urinalysis. Overall, his participation in the program is considered to be good. Due: by 11/28/2017.

Understands concepts and demonstrates behavior(s)     **Date:** 07/20/2017   **Provider:** Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was seen for his fifth 60 Day Review. Inmate was provided a copy of this treatment progress review. He is in Challenge Part status currently attending seminars, process group, and the Orientation Phase of the treatment at the end of the Rational Thinking Journal. He maintains excellent behavior during phase and process group meetings and volunteering to the News Letter Committee. During process groups, he has been opening up more about his feelings. He is starting to understand the essence and the program language. He is an active listener during the morning meetings; he accepts feedback from his peers and uses the feedback to curb his negative thinking. He has not received attitude checks, incident reports, or positive urinalysis in this 60 days period. Overall, he continues making good progress. Due to institutional disrupted schedule and to an extensive lockdown, inmate will have additional time to work with the activities in his treatment plan. Due by 9/29/2017.

Understands concepts and demonstrates behavior(s)     **Date:** 05/25/2017   **Provider:** Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was seen for his third 60 Day Review. Inmate was provided a copy of this treatment progress review to ensure that he is able to track his progress and be advised of any additional treatment activities. He is currently in Phase I in the Rational Thinking Journal. He attends seminars, process groups, phase groups and service groups on a weekly basis and the community morning meetings daily. He keeps his cell clean, and completes all relevant homework assignments. He maintains excellent behavior during phase and process group meetings and volunteering to the News Letter Committee. During process groups, he has been opening up more about his feelings. He is starting to understand the essence and the program language. He is an active listener during the morning meetings; he accepts feedback from his peers and uses the feedback to curb his negative thinking. He also uses the feedback from his peers to help manage his criminal thoughts. Overall, inmate Wadley continues progressing well. He has not received an attitude check, negative teaming, disciplinary report, or positive urinalysis in the last 60 day period. Due by 7/31/2017.

Understands concepts and demonstrates behavior(s)     **Date:** 03/28/2017   **Provider:** Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was seen for his third 60 Day Review. Inmate was provided a copy of this treatment progress review. He is in Challenge Part status currently attending morning meeting, seminars, and process group. He is currently in the Orientation Phase of the Program, in the Orientation Journal. He interacts well with other inmates and staff. In Seminars, Process Group, Service Groups, and Community Morning meetings his comments are polite and helpful and demonstrate caring and a willingness to be responsible. He has been an active participant in the treatment community and process group readily offering his comments in interactive groups and community meetings and volunteering to the News Letter Committee. His has appropriate interacts with staff and his peers. He has set goals and entered into a good relationship with peers and staff. He demonstrated responsibility and willingness by becoming an active member of the community. Overall, inmate Wadley has a fair level of progress. He has not received an attitude check, negative teaming, disciplinary report, or positive urinalysis in the last 60 day period. Due by 6/1/2017.

Understands concepts and demonstrates behavior(s)     **Date:** 01/31/2017   **Provider:** Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Inmate Wadley was seen for his second 60 Day Review. Inmate was provided a copy of this treatment progress review. He is in Challenge Part status currently attending morning meeting, seminars, and process group only. He

| Inmate Name: | WADLEY, LODISE | | | Reg #: 57447-066 | |
|---|---|---|---|---|---|
| Date of Birth: | 12/20/1974 | Sex: M | Race: BLACK | Facility: COP | |
| Open Date: | 10/04/2016 | Closed Date: | Status: Active | Discussed: Yes | |

is scheduled to begin the Orientation Phase of the treatment within two month. Inmate Wadley is assessed to be honestly working on his treatment goals. He has been honest in his struggles, such as responsibility and open-minded. He has been an active participant in the treatment community and process group readily offering his comments in interactive groups and community meetings and volunteering to the News Letter Committee. He has maintained clear conduct and all urinalysis tests have been negative. He interacts well with other inmates and staff. In process group his comments are polite and helpful. His comments demonstrate caring and a willingness to be responsible. Inmate Wadley continues engaged in the treatment community and is well received by peers and staff. He receives positive work reports. Overall, his progress thus far is deemed to be good. Due by 4/2/2017.

Displays conceptual understanding only          **Date:** 11/30/2016  **Provider:** Garcia-Hernandez, Ariel CTS

Inmate Wadley was interviewed today to collaborate on his first 60 Day review. He is in Challenge Part status currently attending morning meeting and process group only. Inmate Wadley was provided a copy of this treatment progress review. He is working on being more open-minded and on managing his negative feelings during perceived wrongs. He has been observed to be willing to follow the program's rules and has been participating well in the small groups and large meetings. He has demonstrated he is able to live in harmony with others and is developing healthy relationships. He noted responsibility was an area with which he has struggled in the past. He is gaining insight in to his criminal and drug usage and has been assigned the task of continuing to gain insight into these areas. He is volunteering to the News Letter Committee. This activity is designed to help develop his sense of community responsibility. Inmate Wadley has not received any incident reports in the past sixty days and overall his progress is fair. Due by 2/1/2017.

**PGI Title:** Criminal Lifestyle

**Status:** Active          **Last Updated:** 01/18/2019   **Last Provider:** Garcia-Hernandez, Ariel CTS

**Problem:**      Inmate Wadley is serving 622 month 6 year SRT for possessing and distribution of crack with a history of criminal behavior beginning at the age of 15 for receiving stolen property. He continued to engage in criminal behavior consistently progressed since then.

**Goal:**          Inmate Wadley will develop an increased awareness of his criminal thinking patterns/errors and the impact of his crimes on himself and others. He will learn to accept responsibility for his actions and utilize adaptive coping skills to manage negative emotions, and behaviors in order to live a more pro-social way of life.

**Interventions:**  Treatment Activity #1A:This activity was completed on  6/1/2017.

Treatment Activity #1B: This activity was completed on 2/1/2017.

Treatment Activity # 1C:This activity was completed on  6/1/2017.

Treatment Activity #1D:This activity was completed on  9/29/2017.

Treatment Activity #1E:This activity was completed on  1/27/2018.

Treatment Activity #1F: This activity was completed on 3/28/2018.

Treatment Activity #1G:This activity was completed on 5/27/2018.

Treatment Activity #1H: This activity was completed on 9/21/2018.

Treatment Activity #1I: This activity was completed on 5/27/2018.

Treatment Activity #1J: Inmate Wadley will learn how to implement the Five Spokes in finding balance. In groups, inmate will talk about how each spoke can be related to his personal situation. This will assist the inmate in maintaining recovery and preventing return to maladaptive behaviors. Due: This will be evaluated by
1/20/2019.

Treatment Activity #1K: Inmate Wadley will discuss the benefits of gaining structure and discipline in his life. He will explore how in the past, his behaviors did not reflect structure and discipline; how he turned to

| | | | | |
|---|---|---|---|---|
| **Inmate Name:** WADLEY, LODISE | | | | **Reg #:** 57447-066 |
| **Date of Birth:** 12/20/1974 | **Sex:** M | | **Race:** BLACK | **Facility:** COP |
| **Open Date:** 10/04/2016 | **Closed Date:** | | **Status:** Active | **Discussed:** Yes |

sell drugs. Here and now how structure in life help him to maintain his principles of his Muslim faith. Due: This activity will be evaluated by 1/20/2019.

Treatment Activity #1L: Inmate Wadley will identify and rehearse the management of future situations or circumstances in which relapses could occur.  He will develop effective exit strategies to apply in his path of recovery and present it to the group for feedback. Due: This activity will be evaluated by 1/20/2019.

**Progress Notes:**

Understands concepts and demonstrates behavior(s) indicative of treatment progress      **Date:** 01/18/2019   **Provider:** Garcia-Hernandez, Ariel CTS

Treatment Activity #1A: This activity was complete on 6/1/2017.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity # 1C: This activity was complete on 6/1/2017.

Treatment Activity #1D: This activity was complete on 9/29/2017.

Treatment Activity #1E: This activity was complete on 1/27/2018.

Treatment Activity #1F: This activity was complete on 3/28/2018.

Treatment Activity #1G: This activity was complete on 5/27/2018.

Treatment Activity #1H: This activity was complete on 9/21/2018.

Treatment Activity #1I : This activity was complete on 5/27/2018.

Treatment Activity #1J: Inmate Wadley learned how to implement the Five Spokes in finding balance.  He continues sharing in groups about how each spoke is related to his personal situation and how he is keeping his life in balance here and now.  He stated, by living a healthy and prosocial lifestyle." For example, using specific self-care skills taught in the program such as: progressive relaxation, journaling, RSA's, and structured communication skills. Due: This activity will remain open for discussion until the remainder of his time in the program.

Treatment Activity #1K: Inmate Wadley continue discussing the benefits of gaining structure and discipline in his life. He has discussed how his use of thinking errors led to a lack of structure and discipline.  Today, he lives a structured life as evidenced by his responsibility in participating in the program in a conscientious manner, he is functioning well at a spiritual and social level, maintains gainful employment. He internalizes that he need to embraces a positive structure and discipline to stay away from the criminal lifestyle.  This activity will remain open until the end of the program at the end of the next month.

Treatment Activity #1L: Inmate Wadley is discussing and rehearsing the management of future situations or circumstances in which relapses could occur.  He is going to keep developing effective exit strategies to apply in his path of recovery and present it to the groups for feedback. Due: This activity will remain open until he completes the program to ensure he continues to remain aware of the need to constantly improve his behavior and continues sharing his experiences with the Community.

Understands concepts and demonstrates behavior(s) indicative of treatment progress      **Date:** 11/16/2018   **Provider:** Garcia-Hernandez, Ariel CTS

Treatment Activity #1A: This activity was complete on 6/1/2017.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity #1C: This activity was complete on 6/1/2017.

| Inmate Name: WADLEY, LODISE | | Reg #: 57447-066 |
|---|---|---|
| Date of Birth: 12/20/1974   Sex: M   Race: BLACK | | Facility: COP |
| Open Date: 10/04/2016   Closed Date: | Status: Active | Discussed: Yes |

Treatment Activity #1D: This activity was complete on 9/29/2017.

Treatment Activity #1E: This activity was complete on 1/27/2018.

Treatment Activity #1F: This activity was complete on 3/28/2018.

Treatment Activity #1G: This activity was complete on 5/27/2018.

Treatment Activity #1H:This activity was complete on 9/21/2018.

Treatment Activity #1I: This activity was complete on 5/27/2018.

Treatment Activity #1J: Inmate Wadley learned how to implement the Five Spokes in finding balance.  In groups, inmate has been talking about how each spoke is related to his personal situation and how he is implementing the new skills to maintain his recovery and avoid go back to maladaptive behaviors.  This will assist the inmate in maintaining recovery and preventing return to maladaptive behaviors.  Due: This activity will remain open for discussion until the remainder of his time in the program.

Treatment Activity #1K: Inmate Wadley continue discussing the benefits of gaining structure and discipline in his life. He has discussed how his use of thinking errors led to a lack of structure and discipline.  Today, he lives a structured life as evidenced by his responsibility in participating in the program in a conscientious manner, he is functioning well at a spiritual and social level, maintains gainful employment. He internalizes that he need to embraces a positive structure and discipline to stay away from the criminal lifestyle.  This activity will remain open until the end of the program at the end of the next month.

Treatment Activity #1L: Inmate Wadley is discussing and rehearsing the management of future situations or circumstances in which relapses could occur.  He is going to keep developing effective exit strategies to apply in his path of recovery and present it to the groups for feedback. Due: This activity will remain open until he completes the program to ensure he continues to remain aware of the need to constantly improve his behavior and continues sharing his experiences with the Community.

Understands concepts and demonstrates behavior(s)   Date: 09/20/2018   Provider: Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity #1A: This activity was complete on 6/1/2017.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity # 1C:This activity was complete on 6/1/2017.

Treatment Activity #1D:This activity was complete on 9/29/2017.

Treatment Activity #1E:This activity was complete on 1/27/2018.

Treatment Activity #1F:This activity was complete on 3/28/2018.

Treatment Activity #1G:This activity was complete on 5/27/2018.

Treatment Activity #1H: Inmate Wadley learned the three C's, discussed in group and explain how he can integrate this knowledge into his daily life. He stated "I continues integrating my new knowledge in order to modify my old negative believe." He is also discussed the spoke check on community involvement and finding meaning and purpose. He continues discussing his Statement of Commitment with the peers. This will assist the inmate in maintaining recovery and preventing return to maladaptive behaviors.  This activity has been discussed extensively and is considered completed on 9/21/2018.

Treatment Activity #1I: This activity was complete on 5/27/2018.

| | | | |
|---|---|---|---|
| Inmate Name: WADLEY, LODISE | | | Reg #: 57447-066 |
| Date of Birth: 12/20/1974 | Sex: M | Race: BLACK | Facility: COP |
| Open Date: 10/04/2016 | Closed Date: | Status: Active | Discussed: Yes |

Treatment Activity #1J: Inmate Wadley learned how to implement the Five Spokes in finding balance. In groups, inmate has been talking about how each spoke is related to his personal situation and how he is implementing the new skills to maintain his recovery and avoid go back to maladaptive behaviors. He stated "I am learning different ways to remain in a balanced life, by living a healthy and prosocial lifestyle." This activity will remain open additional time he will continues discussing when in group. Inmate Wadley will present in seminars the Five Spokes in finding balance. Due by 11/21/2018.

Treatment Activity #1K: Inmate Wadley continue discussing the benefits of gaining structure and discipline in his life. He has discussed how his use of thinking errors led to a lack of structure and discipline. Today, he lives a structured life as evidenced by his responsibility in participating in the program in a conscientious manner, he is functioning well at a spiritual and social level, maintains gainful employment. He noted he realized that he need to embraces a positive structure and discipline to stay away from the criminal lifestyle. Due by 11/21/2018.

Treatment Activity #1L: Added: Inmate Wadley will identify and rehearse the management of future situations or circumstances in which relapses could occur. He will develop effective exit strategies to apply in his path of recovery and present it to the group for feedback. Due: This activity will be evaluated by 11/21/2018.
Not addressed yet                          Date: 07/18/2018   Provider: Garcia-Hernandez, Ariel CTS

Treatment Activity #1A: This activity was complete on 6/1/2017.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity # 1C: This activity was complete on 6/1/2017.

Treatment Activity #1D: This activity was complete on 9/29/2017.

Treatment Activity #1E: This activity was complete on 1/27/2018.

Treatment Activity #1F: This activity was complete on 3/28/2018.

Treatment Activity #1G: This activity was complete on 5/27/2018.

Treatment Activity #1H: Inmate Wadley is currently in the Criminal Lifestyle Journal. He began to explore the spoke check on community involvement and finding meaning and purpose. Then will present and discuss his Statement of Commitment. This will assist the inmate in maintaining recovery and preventing return to maladaptive behaviors. Due: This will be reevaluated by 9/21/2018.

Treatment Activity #1I: This activity was complete on 5/27/2018.

Treatment Activity #1J: Inmate Wadley will learn how to implement the Five Spokes in finding balance. In groups, inmate will talk about how each spoke can be related to his personal situation. This will assist the inmate in maintaining recovery and preventing return to maladaptive behaviors. Due: This will be reevaluated by 9/21/2018.

Treatment Activity #1K: Inmate Wadley will discuss the benefits of gaining structure and discipline in his life. He will explore how in the past, his behaviors did not reflect structure and discipline; how he turned to sell drugs. Here and now how structure in life help him to maintain his principles of his Muslim faith. Due: This activity will be reevaluated by 9/21/2018.
Understands concepts and demonstrates behavior(s)     Date: 05/17/2018   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Treatment Activity #1A: This activity was complete on 6/1/2017.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity #1C: This activity was complete on 6/1/2017.

| Inmate Name: WADLEY, LODISE | | | Reg #: 57447-066 |
|---|---|---|---|
| Date of Birth: 12/20/1974 | Sex:   M | Race:  BLACK | Facility:  COP |
| Open Date:   10/04/2016 | Closed Date: | Status: Active | Discussed:  Yes |

Treatment Activity #1D: This activity was complete on 9/29/2017.

Treatment Activity #1E: This activity was complete on 1/27/2018.

Treatment Activity #1F: This activity was complete on 3/28/2018.

Treatment Activity #1G:  Inmate Wadley completed the Communications Skills Journal.  He stated, "Now I am capable to recognize my physical signs of anger using the anger control strategies. For example, if I start raising my voice is time to check my attitude, examine my thinking, and take time out.  This always helps me to find a safe harbor in those unexpected situation.  I learned that if I keep my options open and I seek compromise will maintain the possibility of positive communication with people. Due: This activity is considered completed on 5/27/2018.

Treatment Activity #1H: Inmate Wadley is currently in the Criminal Lifestyle Journal. He began to explore the spoke check on community involvement and finding meaning and purpose.  Then will present and discuss his Statement of Commitment.  This will assist the inmate in maintaining recovery and preventing return to maladaptive behaviors. Due: This will be evaluated by 7/24/2018.

Treatment Activity #1I: Inmate Wadley is tasked to use information from the Communication Journal to determine how he is relating to others in the here and now.  He stated, "Now I am applying good communication skills in groups and community by being open to listen, honest and improving my participating in all group sessions.  I have been gained insight into my communication style and I am consistently chosen to follow the new less aggressiveness style of communication."  Staff observation is that inmate Wadley is a calm and direct communicator who does not use an aggressive style to express himself. Inmate Wadley has thoroughly addressed this activity previously.   This activity is considered completed on 5/27/2018.

Treatment Activity #1J: Added: Inmate Wadley will learn how to implement the Five Spokes in finding balance. In groups, inmate will talk about how each spoke can be related to his personal situation. This will assist the inmate in maintaining recovery and preventing return to maladaptive behaviors. Due: This will be evaluated by 7/24/2018.

Treatment Activity #1K: Added: Inmate Wadley will discuss the benefits of gaining structure and discipline in his life. He will explore how in the past, his behaviors did not reflect structure and discipline; how he turned to sell drugs. Here and now how structure in life help him to maintain his principles of his Muslim faith. Due: This activity will be evaluated by 7/24/2018.

Understands concepts and demonstrates behavior(s)      Date: 03/26/2018   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Treatment Activity #1A: This activity was complete on 6/1/2017.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity # 1C: This activity was complete on 6/1/2017.

Treatment Activity #1D:  This activity was complete on 9/29/2017.

Treatment Activity #1E: This activity was complete on 1/27/2018.

Treatment Activity #1F: As we discussed previously, inmate Wadley learned about criminal thinking errors and how to stop using those.  Now he is capable to clearly identify the use of criminal thinking errors that preclude him to accomplish his goals, and promulgates irrational behavior. He added has learned the uses of the five rules of rational thinking extensively.  He has stated, "those five rules help me to stay focused on getting my goals in the program and freedom."  He is observed by staff to conduct his affairs in a rational manner.  His behavior suggests he uses rational thinking.  Since he is using rational thinking skills regularly, this activity has been completed on 3/28/2018.

| | | | | |
|---|---|---|---|---|
| **Inmate Name:** WADLEY, LODISE | | | | **Reg #:** 57447-066 |
| **Date of Birth:** 12/20/1974 | **Sex:** M | | **Race:** BLACK | **Facility:** COP |
| **Open Date:** 10/04/2016 | **Closed Date:** | | **Status:** Active | **Discussed:** Yes |

Treatment Activity #2G:  Inmate is currently in the Communications Skills Journal. Inmate Wadley has been practicing good communications skills in group by being open, honest and participating in all group sessions.  He has gained insight into his communication style and has consistently chosen to follow the new style of less aggressive communication. This activity will remain open another 60 day period so that he can share this information in his next seminar presentation, and seek feedback from the community.  Due by 5/27/2018.

Treatment Activity #1G: Inmate Wadley will be entering the Criminal Lifestyle Journal within the next three weeks. Then will present and discuss his Statement of Commitment to change the criminal lifestyle, with his groups and will seek feedback from his peers.  Due by 5/27/2018.

Treatment Activity #1H: Added: Inmate Wadley is tasked to use information from the Communication Journal to determine how he is relating to others in the here and now.  Is he appropriate and is he advancing his goals with his communication style?  He is to share this with his peers.  Due: Will be evaluated by 5/27/2018.
Understands concepts and demonstrates behavior(s)   **Date:** 01/19/2018  **Provider:** Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity #1A: This activity was complete on 6/1/2017.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity #1C: This activity was complete on 6/1/2017.

Treatment Activity #1D: This activity was complete on 9/29/2017.

Treatment Activity #1E:  Inmate Wadley is learned the three C's.  He is discussing them in group and how he can integrate this knowledge into his daily life.  Now that he learned the concept of the three C's, He stated "I continues integrating my new knowledge in order to modify my old negative believe." This activity has been discussed extensively and is considered completed on 1/27/2018.

Treatment Activity #1F: As we discussed previously, inmate Wadley is learning about criminal thinking errors.  He is capable to identify the thinking errors that he considers are dangerous for him: mollification, entitlement, and super optimism. He stated "The use of this thinking errors brought me to prison I will do the necessary to control and eradicate these." This activity will remain open another 60 day to encourage him to share this information when in group.  Due by 3/28/2018.

Treatment Activity #2G:  Inmate has not yet entered the Communications Skills Journal. However, inmate Wadley has been practicing good communications skills in group by being open, honest and participating in all group sessions.  He will learn and apply the three elements of communications and seek feedback.  Due:  This activity will be evaluated by 3/28/2018.

Treatment Activity #1G: Added: Inmate Wadley will discuss his Statement of Commitment to change the criminal lifestyle, with his groups and will seek feedback from his peers.  Due by 3/28/2018.
Understands concepts and demonstrates behavior(s)    **Date:** 11/20/2017  **Provider:** Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity #1A: This activity was complete on 6/1/2017.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity #1C: This activity was complete on 6/1/2017.

Treatment Activity #1D:  This activity was complete on 9/29/2017.

Treatment Activity #1E:  Inmate Wadley is learned the three C's.  He is discussing them in group and how he can integrate this knowledge into his daily life.  Now that he learned the concept of the three C's, he is discussing in group the way he integrated the concepts in his life, and actually exhibiting the control over his cognitions and

| Inmate Name: | WADLEY, LODISE | | | Reg #: 57447-066 | |
|---|---|---|---|---|---|
| Date of Birth: | 12/20/1974 | Sex: | M | Race: BLACK | Facility: COP |
| Open Date: | 10/04/2016 | Closed Date: | | Status: Active | Discussed: Yes |

choices. He stated "I continues integrating my new knowledge in order to modify my old negative believe."  Due: This will be evaluated in the next 60 day by 1/27/2018.

Treatment Activity #1F: Inmate Wadley is learning about criminal thinking errors. He identifies Mollification, and Cutoff the most used in the past. Inmate Wadley has shared he now uses objectivity to balance his excuse making. This activity will remain open while he develops additional skills to curb Cutoff. Due by 1/27/2018.

Treatment Activity #2G: Inmate has not yet entered the Communications Skills Journal. However, inmate Wadley has been practicing good communications skills in group by being open, honest and participating in all group sessions. He will learn and apply the three elements of communications and seek feedback.  Due: This activity will be evaluated by 1/27/2018.

Understands concepts and demonstrates behavior(s)     Date: 09/18/2017   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Treatment Activity #1A: This activity was complete on 6/1/2017.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity #1C: This activity was complete on 6/1/2017.

Treatment Activity #1D: As we discussed previously, inmate Wadley noted he used blaming, and loaded words, the most used in the past.  Inmate Wadley has shared he now uses objectivity to balance his excuse making. He noted also that still uses Cutoff at times to avoid negative feelings with others, but not to commit infractions.  It is expecting that he will continues using the RSA's as a valuable instrument to improve his rational thinking and continues sharing the outcome and accepting feedback. He explained, "By using RSA's it help me to stay objective in my behavior when dealing with my peers and staff.  It has assisted me to see a situation more clearly."  Due:  This treatment activity has been completed on 9/29/2017.

Treatment Activity #1E:  Inmate has not yet entered to this Journal he is learning the three C's, and discussing in group and explain how he can integrate this knowledge into his daily life.  This activity will remain open beyond this due date for on-going examination.  Due: This will be evaluated in the next 60 days by 11/28/2017.

Treatment Activity #1F: Inmate Wadley has not entered the Criminal Lifestyle journal. He will learn about criminal thinking errors in that Journal, which will begin within the next 60 days.  He will discuss in group his criminal behavior.  He will learn the reasons for his past behavior and accept feedback from others which may add to his discoveries. Due: This activity will be evaluated by 11/28/2017.

Treatment Activity #2G: Added:  Inmate has not yet entered the Communications Skills Journal. However, inmate Wadley has been practicing good communications skills in group by being open, honest and participating in all group sessions. He will learn and apply the three elements of communications and seek feedback.  Due: This activity will be evaluated by 11/28/2017.

Understands concepts and demonstrates behavior(s)     Date: 07/20/2017   Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Treatment Activity #1A: This activity was complete on 6/1/2017.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity #1C: This activity was complete on 6/1/2017.

Treatment Activity #1D: As we discussed previously, inmate Wadley noted he used blaming, and loaded words, the most used in the past.  Inmate Wadley has shared he now uses objectivity to balance his excuse making. He noted also that still uses Cutoff at times to avoid negative feelings with others, but not to commit infractions.  He is showing progress.  He has been using the RSA's to overcome using the Rationing Thinking Errors. Wadley continues gaining a broader perspective of the RSAs.  This perspective has been helping him balance his thinking to become more rational. He acknowledges that he needs to do a better job of curbing his use of these thinking areas. Using the

| Inmate Name: WADLEY, LODISE | | Reg #: 57447-066 |
|---|---|---|

Inmate Name: WADLEY, LODISE

Date of Birth: 12/20/1974   Sex:   M

Open Date:   10/04/2016   Closed Date:

Reg #:  57447-066

Facility: COP

Discussed: Yes

Race:  BLACK

Status: Active

Criminal Lifestyle Journal in which he will be working in the near future and he will obtain more benefit.  This activity will remain open for another 60 days. Due by 9/29/2017.

Treatment Activity #1E:  Inmate Wadley will learn the three C's, then discuss in group and explain how he can integrate this knowledge into his daily life.  This activity will remain open beyond this due date for on-going examination.  Due: This will be evaluated in the next 60 days by 9/29/2017.

Treatment Activity #1F: Inmate Wadley will learn about criminal thinking errors in the Criminal Lifestyle journal, which will begin within the next 60 days.  He will discuss in group his criminal behavior.  He will learn the reasons for his past behavior and accept feedback from others which may add to his discoveries.  Due: This activity will be evaluated by 9/29/2017.

Understands concepts and demonstrates behavior(s)   **Date:** 05/25/2017   **Provider:** Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity: #1A: As noted in the last 60 day progress review inmate Wadley continues to share with his peers how his criminal behavior has impacted his life and the life of others.  He has been honest about his past and has not glorified his crimes.  is le He has shared that he feels very optimistic about his next goal to reach, which is to learn to stop using thinking errors and use rational thinking. He added that he is committed to continue adhering to all the rules and regulations of the program using the Positive Attitudes of Change in order to reach his goals.  This activity is considered complete on 6/1/17.

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity # 1C:  Inmate Wadley has discussed this topic extensively, while in process group, seminars and during opportunities in the community meeting. He was able to recite the Positive Attitudes of Change and gave specific examples of each as it relates to his life. He has been expressing willingness, open-mindedness and caring toward his peers.  Inmate appears to be more receptive to accept feedback he shows a fair improvement in his responses an open-mindedness attitude.  Overall, this inmate has addressed this activity and has made notable progress.  This activity is considered complete on 6/1/17.

Treatment Activity #1D: Inmate Wadley noted he used blaming, and loaded words, the most used in the past.  Inmate Wadley has shared he now uses objectivity to balance his excuse making. He noted he still uses Cutoff at times to avoid negative feelings with others, but not to commit infractions.  He is showing progress.  He has been using the RSA's to overcome using the Rationing Thinking Errors.  Wadley has been gaining a broader perspective of the RSAs. This perspective has been helping him balance his thinking to become more rational. He acknowledges that he needs to do a better job of curbing his use of these thinking areas. Using the Criminal Lifestyle Journal in which he will be working in the near future and he will obtain more benefit.  This activity will remain open for another 60 days. Due by 7/31/2017.

Treatment Activity #1E: Added:  Inmate Wadley will learn the three C's, then discuss in group and explain how he can integrate this knowledge into his daily life.  This activity will remain open beyond this due date for on-going examination.  Due: This will be evaluated in the next 60 days by 7/31/2017.

Treatment Activity #1F: Added: Inmate Wadley will learn about criminal thinking errors in the Criminal Lifestyle journal, which will begin within the next 60 days.  He will discuss in group his criminal behavior.  He will learn the reasons for his past behavior and accept feedback from others which may add to his discoveries.  Due: This activity will be evaluated by 7/31/2017.

Understands concepts and demonstrates behavior(s)   **Date:** 03/28/2017   **Provider:** Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity: #1A: As noted in the last 60 day progress review inmate Wadley has begun to share with his peers how his criminal behavior has impacted his life and the life of others.  He has been honest about his past and has not glorified his crimes.  He explained he maintained his criminal activity over many years since he was earning money, with no consideration of the impact in his life and the life of others.  This activity will remain open for additional processing while he is in the Orientation Phase and has the opportunity to discuss it at length. Due by 6/1/2017.

| | | | |
|---|---|---|---|
| **Inmate Name:** WADLEY, LODISE | | | **Reg #:** 57447-066 |
| **Date of Birth:** 12/20/1974 | **Sex:** M | **Race:** BLACK | **Facility:** COP |
| **Open Date:** 10/04/2016 | **Closed Date:** | **Status:** Active | **Discussed:** Yes |

Treatment Activity #1B: This activity was complete on 2/1/2017.

Treatment Activity # 1C:  Inmate Wadley is currently in the Orientation Phase of the program. He was able to recite the Positive Attitudes of Change and gave specific examples of each as it relates to his life.  For example, in this encounter he has been struggling with objectivity.  He stated, "I was habituated to jump to conclusions not taking in consideration the facts in that particular situation." He added that he is committed to continue adhering to all the rules and regulations of the program using the Positive Attitudes of Change.  This activity will remain open during the next 60 Days while he explores this further, receives feedback about how to improve, and ultimately improves in this area.  Due by 6/1/2017.

Treatment Activity #1D: Inmate Wadley has not yet entered the Rational Thinking Journal.  Once he enters he will identify the thinking errors which he used the most and how he has curbed them.  He will memorize and apply the five rules of rational thinking.  Due by 6/1/2017.

Understands concepts and demonstrates behavior(s)     **Date:** 01/31/2017   **Provider:** Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Treatment Activity: #1A: Inmate Wadley has begun to share with his peers how his criminal behavior has impacted his life and the life of others.  He has been honest about his past and has not glorified his crimes. He explained he maintained his criminal activity over many years since he was earning money, with no consideration of the impact in his life and the life of others.  This activity will remain open for additional processing while he is in the Orientation Phase and has the opportunity to discuss it at length.  Due by 4/2/2017.

Treatment Activity #1B: Inmate Wadley was tasked with learn the Philosophy Statement by the time of his first 60 Day Review.  During this encounter he was able to recite the Philosophy Statement.  He explained, "The Philosophy Statement is teaching me those principles that I overlook in the pass.  Now I am willing to apply those principles in order to reconcile myself with the society." He has demonstrated some personal growth from this activity.  This activity is considered complete on 2/1/2017.

Treatment Activity # 1C:  Inmate Wadley has not yet entered the Orientation Phase of the program.  He was able to recite the Positive Attitudes of Change and gave specific examples of each as it relates to his life.  For example, in this encounter he has been struggling with objectivity.  He stated, "I was habituated to jump to conclusions not taking in consideration the facts in that particular situation." He added that he is committed to continue adhering to all the rules and regulations of the program using the Positive Attitudes of Change.  This activity will remain open during the next 60 Days while he explores this further, receives feedback about how to improve, and ultimately improves in this area.  Due by 4/2/2017.

Treatment Activity #1D: Added: Inmate Wadley will be learning the Rational Thinking Errors and will be tasked with identifying the thinking errors which he used the most and how he has curbed them.  He will memorize and apply the five rules of rational thinking.  Due by 4/2/2017.

Understands concepts and demonstrates behavior(s)     **Date:** 11/30/2016   **Provider:** Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Treatment Activity: #1A: Inmate Wadley has begun to share with his peers how his criminal behavior has impacted his life and the life of others.  He has been honest about his past and has not glorified his crimes.  Inmate Wadley stated that when he was committing crimes he did not think about the repercussions it would have on his life and his loved one's life.  Since it is important he continues to discuss this as he continues in the Process Groups, this activity will remain open and will be reevaluated by 2/1/2017.

Treatment Activity #1B: Inmate Wadley was tasked with learn the Philosophy Statement by the time of his first 60 Day Review.  He is unable to recite the Philosophy Statement. He reported that he is able to recite the statement with assistance.  He added, "The Philosophy Statement shows me to be fully aware of my responsibility with the society but, especially with me." Also that he acknowledges the importance of memorizing it and plans to have it memorized in the next 60 days review due by 2/1/2017.

Treatment Activity # 1C:  Inmate Wadley has not yet entered the Orientation Phase of the program. He reported that

| | | |
|---|---|---|
| **Inmate Name:** WADLEY, LODISE | | **Reg #:** 57447-066 |
| **Date of Birth:** 12/20/1974 | **Sex:** M | **Race:** BLACK | **Facility:** COP |
| **Open Date:** 10/04/2016 | **Closed Date:** | **Status:** Active | **Discussed:** Yes |

he is working on memorizing the Eight Attitudes of Change. During this review he recited a few of the concepts and gave specific examples of them. He identified the following concept: Responsibility. At this time he has insight and has acknowledged he needs to continue improving on this concept he has been struggling for long time. Due by 2/1/2017.

**PGI Title:** Substance Abuse

**Status:** Active          **Last Updated:** 01/18/2019    **Last Provider:** Garcia-Hernandez, Ariel CTS

**Problem:**     Inmate Wadley reported he began to use marijuana at the age 13 and progressed to daily use by the age of 18. He began to use codeine syrup at the age of 15 and used it daily periodically increases. He noted he developed tolerance, cravings, and withdrawal symptoms. He noted he developed tolerance for the drug and added he became lazy, forgetful, and negatively impacted areas of life such as work, relationships, finances, and legal.

**Goal:**     Inmate Wadley reported he stopped using drugs 13 years ago and now is seeking additional reinforcement for his sober and non-drug using lifestyle. He wants to continue this healthy lifestyle utilizing healthy coping mechanism. He will learn to accept responsibility for his actions and utilize adaptive coping skills to manage negative emotions.

**Interventions:** Treatment Activity #2A:This activity was complete on 11/28/2017.

Treatment Activity #2B: This activity was complete on 9/21/2018.

Treatment Activity# 2C: This activity was complete on 3/28/2018.

Treatment Activity# 2D:Inmate Wadley will present and discuss "What are some of the obstacles that may interfere with your positive change." Discuss this with your peers during group sessions and seek feedback. Due: This activity will be evaluated by 1/20/2019.

Treatment Activity #2E: Inmate Wadley is discussing with his peers the impact that relapse will have on himself and his family. He identified support networks like family, he identify this as a primary support network for him. This will assist the inmate in maintaining recovery and preventing return to maladaptive behaviors. Due: This will be reevaluated by 1/20/2019.

Treatment Activity #2F: Inmate Wadley will identify the Key transition issues he believe will be the greatest challenge for him and present it to the group for feedback. Due: This activity will remain open until he completes the program or by 1/20/2019.

**Progress Notes:**

Understands concepts and demonstrates behavior(s)     **Date:** 01/18/2019  **Provider:** Garcia-Hernandez, Ariel CTS
indicative of treatment progress

    Treatment Activity #2A: This activity was complete on 11/28/2017.

    Treatment Activity #2B: This activity was complete on 9/21/2018.

    Treatment Activity# 2C: This activity was complete on 3/28/2018.

    Treatment Activity #2D: As we discussed previously, Inmate Wadley continues presenting and discussing in seminars, "What are some of the obstacles that may interfere with his positive change. He noted, "My old lifestyle is not part of my future. I am internalizing new and positives believe which will help me to stay in balance." He wants to implements RSA's and self-talks to help him work through irrational thinking. This activity will remain open until he completes the program to ensure he continues to remain aware of the need to constantly improve his behavior and continues sharing his experiences with the peers.

    Treatment Activity #2E: Inmate Wadley continue discussing with his peers the impact that relapse will have on himself and his family. He stated that will be a negative impact in his relationship with his family and friends, and the loss of freedom or life. He pointed, "The old lifestyle, the need for money, and the old friend are triggers in my life." This activity will remain open until the end of the program at the end of the next month.

| Inmate Name: WADLEY, LODISE | | | Reg #: 57447-066 |
| Date of Birth: 12/20/1974 | Sex:  M | Race:  BLACK | Facility:  COP |
| Open Date:  10/04/2016 | Closed Date: | Status: Active | Discussed:  Yes |

Treatment Activity #2F: Inmate Wadley identified the Key transition issues he believe will be the greatest challenge for him, "Social Pressure." He is to continue discussing it with his peers for feedback. This activity will remain open until the end of the program at the end of the next month.

Understands concepts and demonstrates behavior(s)     Date: 11/16/2018   Provider: Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity #2A: This activity was complete on 11/28/2017.

Treatment Activity #2B: This activity was complete on 9/21/2018.

Treatment Activity# 2C: This activity was complete on 3/28/2018.

Treatment Activity #2D: As we discussed previously, inmate Wadley continues presenting and discussing in seminars, "What are some of the obstacles that may interfere with his positive change. He noted, "My old lifestyle is not part of my future.  I am internalizing new and positives believe which will help me to stay in balance." He wants to implements RSA's and self-talks to help him work through irrational thinking. This activity will remain open until he completes the program to ensure he continues to remain aware of the need to constantly improve his behavior and continues sharing his experiences with the peers.

Treatment Activity #2E: Inmate Wadley continue discussing with his peers the impact that relapse will have on himself and his family. He stated that will be a negative impact in his relationship with his family and friends, and the loss of freedom or life.  He pointed, "The old lifestyle, the need for money, and the old friend are triggers in my life." This activity will remain open until the end of the program at the end of the next month.

Treatment Activity #2F: Inmate Wadley identified the Key transition issues he believe will be the greatest challenge for him, "Social Pressure." He is to continue discussing it with his peers for feedback.  This activity will remain open until the end of the program at the end of the next month.

Understands concepts and demonstrates behavior(s)     Date: 09/20/2018   Provider: Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity #2A: This activity was complete on 11/28/2017.

Treatment Activity #2B: As noted in the last 60 day progress review inmate Wadley continues participating in the community in a pleasing manner. He identified triggers to relapse with his peers.  He continues participating in healthies activities which do not involve the use of alcohol or drugs. As a tactic he is implementing the new skills learned to maintain his recovery and avoid go back to maladaptive behaviors.  He stated "I learned different ways to remain in a balanced life, by living a healthy and prosocial lifestyle and avoid the temptation to use alcohol." He has thoroughly examined this area and this activity is considered completed on 9/21/2018.

Treatment Activity# 2C: This activity was complete on 3/28/2018.

Treatment Activity #2D: As we discussed previously, inmate Wadley continues presenting and discussing in seminars, "What are some of the obstacles that may interfere with his positive change. He noted, "My old lifestyle is not part of my future.  I am internalizing new and positives believe which will help me to stay in balance." He wants to implements RSA's and self-talks to help him work through irrational thinking. This activity will remain open until he completes the program to ensure he continues to remain aware of the need to constantly improve his behavior and continues sharing his experiences with the Community. Due by 11/21/2018.

Treatment Activity #2E: Inmate Wadley continue discussing with his peers the impact that relapse will have on himself and his family. He stated that will be a negative impact in his relationship with his family and friends, and the loss of freedom or life.  He indicated that he is conscious that the recovery is a life time journey of commitment. Due by 11/21/2018.

Treatment Activity #2F: Added: Inmate Wadley will identify the Key transition issues he believe will be the greatest challenge for him and present it to the group for feedback.  Due: This activity will remain open until he completes the

| Inmate Name: WADLEY, LODISE | | | Reg #: 57447-066 |
| --- | --- | --- | --- |
| Date of Birth: 12/20/1974 | Sex: M | Race: BLACK | Facility: COP |
| Open Date: 10/04/2016 | Closed Date: | Status: Active | Discussed: Yes |

program or by 11/21/2018.
Not addressed yet                                    Date: 07/18/2018  Provider: Garcia-Hernandez, Ariel CTS
     Treatment Activity #2A: This activity was complete on 11/28/2017.

     Treatment Activity #2B: Inmate Wadley continues participating in the community in a pleasing manner. He acknowledges that he will need to be more involved in the community meetings and has been observed in some interaction with community members during the word of the day segment of these meetings.  He is also assisting in giving pull-ups and constructive feedback in the morning meeting and groups. His involvement demonstrates willingness, responsibility, humility, and caring. This activity will remain open for further review by 9/21/2018.

     Treatment Activity# 2C: This activity was complete on 3/28/2018.

     Treatment Activity #2D: Inmate Wadley is presenting and discussing in seminars, "What are some of the obstacles that may interfere with his positive change." He share with the community his personal triggers that could make him relapse. For example, old friends who continue to use drugs and specific places in the neighborhood. This activity will remain open another 60 day period so that he can share this information in his next seminar presentation. Due by 9/21/2018.

     Treatment Activity #2E: Inmate Wadley is discussing with his peers the impact that relapse will have on himself and his family. He identified support networks like family, religion group, and social organizations against alcohol and drugs.  These groups will increase the time he spends engaging in pro-social activities that increase his chances of sobriety and decrease his maladaptive behaviors. He added, "I recognize that a relapse will have an inimical action on me and my family relationship." Due: This will be reevaluated by 9/21/2018.
Understands concepts and demonstrates behavior(s)     Date: 05/17/2018  Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress
     Treatment Activity #2A: This activity was complete on 11/28/2017.

     Treatment Activity #2B: Inmate Wadley continues participating in the community in a pleasing manner. He acknowledges that he will need to be more involved in the community meetings and has been observed in some interaction with community members during the word of the day segment of these meetings.  He is also assisting in giving pull-ups and constructive feedback in the morning meeting and groups. His involvement demonstrates willingness, responsibility, humility, and caring. This activity will remain open for further review by 7/24/2018.

     Treatment Activity# 2C: This activity was complete on 3/28/2018.

     Treatment Activity #2D: Inmate Wadley is presenting and discussing in seminars, "What are some of the obstacles that may interfere with his positive change." He share with the community his personal triggers that could make him relapse. For example, old friends who continue to use drugs and specific places in the neighborhood. This activity will remain open another 60 day period so that he can share this information in his next seminar presentation. Due by 7/24/2018.

     Treatment Activity #2E: Inmate Wadley is discussing with his peers the impact that relapse will have on himself and his family. He identified support networks like family, religion group, and social organizations against alcohol and drugs.  These groups will increase the time he spends engaging in pro-social activities that increase his chances of sobriety and decrease his maladaptive behaviors. He added, "I recognize that a relapse will have an inimical action on me and my family relationship." Due: This will be reevaluated by 7/24/2018.
Understands concepts and demonstrates behavior(s)     Date: 03/26/2018  Provider: Garcia-Hernandez, Ariel CTS
indicative of treatment progress
     Treatment Activity #2A: This activity was complete on 11/28/2017.

     Treatment Activity #2B: Inmate Wadley has participated in the community in a pleasing manner. He acknowledges that he will need to be more involved in the community meetings and has been observed in some interaction with community members during the word of the day segment of these meetings.  He is also assisting in giving pull-ups and constructive feedback in the morning meeting and groups. His involvement demonstrates willingness,

| | | | |
|---|---|---|---|
| Inmate Name: WADLEY, LODISE | | Reg #: 57447-066 | |
| Date of Birth: 12/20/1974 | Sex: M | Race: BLACK | Facility: COP |
| Open Date: 10/04/2016 | Closed Date: | Status: Active | Discussed: Yes |

responsibility, humility, and caring. This activity will remain open for further review by 5/27/2018.

Treatment Activity# 2C: As we discussed previously, inmate Wadley continues exploring new activities that he can participate in, while incarcerated and after release, that are free from drugs and alcohol. Inmate has become more involved in the community by voluntarily participating in giving feedback to program participants during pull ups. He has also given positive praise to community members and maintains his principles of his Muslim faith. His increased involvement in the community demonstrates his willingness and caring. Inmate Wadley has thoroughly addressed this activity previously.   This activity is considered completed on Due by 3/28/2018.

Treatment Activity #2D: Inmate Wadley is presenting and discussing in seminars "What are some of the obstacles that may interfere with his positive change." Continues discussing this with your peers during group sessions and seek feedback. Due: This activity will be evaluated by 5/27/2018.

Treatment Activity #2E: Inmate Wadley is discussing with his peers the impact that relapse will have on himself and his family. He identified support networks like family, he identify this as a primary support network for him.  This will assist the inmate in maintaining recovery and preventing return to maladaptive behaviors.  Due: This will be reevaluated by 5/27/2018.

Understands concepts and demonstrates behavior(s)   Date: 01/19/2018   Provider: Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity #2A: This activity was complete on 11/28/2017.

Treatment Activity #2B: Inmate Wadley has participated in the community in a pleasing manner. He acknowledges that he will need to be more involved in the community meetings and has been observed in some interaction with community members during the word of the day segment of these meetings.  Inmate Wadley continues working on improving his participation in community meetings and states that within the next 60 days there will be improvement in this area.  This activity will remain open for further review. By 3/28/2018.

Treatment Activity# 2C: Inmate Wadley continues exploring new activities that he can participate in, while incarcerated and after release, that are free from drugs and alcohol. Inmate has become more involved in the community by voluntarily participating in giving feedback to program participants during pull ups. He has also given positive praise to community members and maintains his principles of his Muslim faith. His increased involvement in the community demonstrates his willingness and caring. This activity will remain open for another 60 days.  Due by 3/28/2018.

Treatment Activity #2D: Added: Inmate Wadley will present and discuss "What are some of the obstacles that may interfere with your positive change." Discuss this with your peers during group sessions and seek feedback. Due: This activity will be evaluated by 3/28/2018.

Understands concepts and demonstrates behavior(s)   Date: 11/20/2017   Provider: Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity #2A: Inmate Wadley continues openly sharing his drug use history with his peers, he accepts and gave feedback. He stated that his addiction was harmful to relationships especially with his family. He explained again that the principles of his Muslim faith, which are also consistent with the principles of the program, have helped him to maintain focus on his goals and maintain sobriety. He added that these principles such as responsibility and willingness have helped him to keep thinking errors such as cognitive indolence and discontinuity at bay. In addressing the activity, it is his commitment to these principles found in his faith and in the program which have helped him to change. He has discussed this at length and, therefore, this activity is considered complete on 11/28/17.

Treatment Activity #2B: Inmate Wadley has participated in the community in a pleasing manner.  He has provided feedback during pull-ups, has provided positive praise, has participated and presented as part of the Morning Organizer Committee. Also he has been developed as the spiritual guide for some Muslims in the unit.  He will continues working in topics related to the process of Change for his seminar hour. This activity will remain open for on-going evaluation throughout the next 60 day review, which will be by 1/27/2018.

| | | |
|---|---|---|
| Inmate Name: WADLEY, LODISE | Reg #: 57447-066 | |
| Date of Birth: 12/20/1974   Sex:  M   Race:  BLACK | Facility:  COP | |
| Open Date: 10/04/2016   Closed Date:   Status: Active | Discussed:  Yes | |

Treatment Activity# 2C: As we discussed previously, inmate Wadley noted he continues discussing activities that he can participate in, while incarcerated and after release, that are free from drugs and alcohol. Inmate has become more involved in the community by voluntarily participating in giving feedback to program participants during pull ups. He has also given positive praise to community members and maintains his principles of his Muslim faith. His increased involvement in the community demonstrates his willingness and caring. This activity will remain open to encourage his continued involvement. Due: This activity will be reevaluated by 1/27/2018.

Treatment Activity# 2D: Added: Inmate Wadley is tasked to use information from the Communication Journal to determine how he is relating to others in the here and now. Is he appropriate and is he advancing his goals with his communication style? He is to share this in seminars with his peers. Due by 1/27/2018.

Understands concepts and demonstrates behavior(s)      Date: 09/18/2017  Provider: Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity #2A: Inmate Wadley continues openly sharing his drug use history with his peers, he accepts and gave feedback. He stated that his addiction was harmful to relationships especially with his family. Now "My life has changed for good since I have been participating in the program." This activity will remain open to allow him to continue identifying and sharing the underlying reasons and motivations for his drug use and the reasons he stopped using drugs. Due: This will be reevaluated by 11/28/2017.

Treatment Activity #2B: Inmate Wadley has participated in the community in a pleasing manner.  He has provided feedback during pull-ups, has provided positive praise, has participated and presented as part of the Morning Organizer Committee.   He continues working in a topic for his seminar hour. This activity will remain open for on-going evaluation throughout the next 60 day review, which will be by 11/28/2017.

Treatment Activity# 2C: As we discussed previously, inmate Wadley noted he continues discussing activities that he can participate in, while incarcerated and after release, that are free from drugs and alcohol.  He explained that the principles of his Muslim faith, which are also consistent with the principles of the program, have helped him to maintain focus on his goals and maintain sobriety.  He is sharing and discussing in process group his history of drug/alcohol use. This activity will remain open for on-going review.  Due by 11/28/2017.

Understands concepts and demonstrates behavior(s)      Date: 07/20/2017  Provider: Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity #2A: Inmate Wadley continues sharing his drug use history with his peers, he accepts and gave feedback. He began analyzing the negative impact of drug use in his life. He added, "This was the way I harmed myself, and my family.  Now I am taking ownership for my negative thoughts and behaviors."  CTS observations of Inmate Wadley are that, he is implementing the Attitudes of Change as seen by assisting his peers, caring for the community. This activity will remain open longer until he learns additional concepts that will help him to better understand his substance abuse and negative behaviors. Due: This will be reevaluated by 9/29/2017.

Treatment Activity #2B: Inmate Wadley has participated in the community in a pleasing manner.  He has provided feedback during pull-ups, has provided positive praise, has participated and presented as part of the Morning Organizer Committee.  He continues working in a topic for his seminar hour. "The role that the criminality plays in society." This activity will remain open for on-going evaluation throughout the next 60 day review, which will be by 9/29/2017.

Treatment Activity# 2C: In this encounter inmate Wadley continues discussing activities that he can participate in, while incarcerated and after release, that are free from drugs and alcohol.  He explained that the principles of his Muslim faith, which are also consistent with the principles of the program, have helped him to maintain focus on his goals and maintain sobriety.  He is sharing and discussing in process group his history of drug/alcohol use. This activity will remain open for on-going review.  Due by 9/29/2017.

Understands concepts and demonstrates behavior(s)      Date: 05/25/2017  Provider: Garcia-Hernandez, Ariel CTS indicative of treatment progress

Treatment Activity #2A: As noted in the last 60 day progress review inmate Wadley continues sharing his drug use history with his peers, he accepts and gave feedback. He began analyzing the negative impact of drug use in his life. He added, "This was the way I harmed myself, and my family.  Now I am taking ownership for my negative thoughts and behaviors."  CTS observations of Inmate Wadley are that, he is implementing the Attitudes of Change as seen

| Inmate Name: | WADLEY, LODISE | | | Reg #: | 57447-066 |
| Date of Birth: | 12/20/1974 | Sex: | M | Race: BLACK | Facility: COP |
| Open Date: | 10/04/2016 | Closed Date: | | Status: Active | Discussed: Yes |

by assisting his peers, caring for the community. This activity will remain open longer until he learns additional concepts that will help him to better understand his substance abuse and negative behaviors. Due: This will be reevaluated by 7/31/2017.

Treatment Activity #2B: Inmate Wadley has participated in the community in a pleasing manner. He has provided feedback during pull-ups, has provided positive praise, has participated and presented as part of the Morning Organizer Committee. He continues working in a topic for his seminar hour. "The role that the criminality plays in society." This activity will remain open for on-going evaluation throughout the next 60 day review, which will be by 7/31/2017.

Treatment Activity# 2C: In this encounter inmate Wadley continues discussing activities that he can participate in, while incarcerated and after release, that are free from drugs and alcohol. He explained that the principles of his Muslim faith, which are also consistent with the principles of the program, have helped him to maintain focus on his goals and maintain sobriety. He is sharing and discussing in process group his history of drug/alcohol use. This activity will remain open for on-going review. Due by 7/31/2017.

Understands concepts and demonstrates behavior(s)    **Date:** 03/28/2017  **Provider:** Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Treatment Activity #2A: Inmate Wadley continues sharing his drug use history with his peers, he accepts and gave feedback. He stated, "My motivation is the family and my goal is to be with them; I will maintain my sober status. I have been sober for fourteen year and I want to stay that way the rest of my life." This activity will remain open longer until he learns additional concepts that will help him to better understand his substance abuse and negative behaviors. Due: This will be reevaluated by 6/1/2017.

Treatment Activity #2B: Inmate Wadley is tasked with present, support, and participates in the Community Meeting and seminars in a regular fashion. He continues working in a topic for his seminar hour. Inmate explained, "The topic is the role that the criminality plays in society. This helps me to continue developing honest insight into my drug use, and criminal lifestyle." Due: This activity will remain open for on-going evaluation throughout the next 60 day review, which will be by 6/1/2017.

Treatment Activity# 2C: Inmate Wadley continues energetic in activities that he can participate in, while incarcerated and after release, that are free from drugs and alcohol. He explained that the principles of his Muslim faith, which are also consistent with the principles of the program, have helped him to maintain focus on his goals and maintain sobriety. He is sharing and discussing in process group his history of drug/alcohol use. Due: This will be reevaluated by 6/1/2017.

Understands concepts and demonstrates behavior(s)    **Date:** 01/31/2017  **Provider:** Garcia-Hernandez, Ariel CTS
indicative of treatment progress

Treatment Activity #2A: Inmate Wadley continues sharing his drug use history with his peers, he accepts and gave feedback. He stated, "Thinking about the consequences of my choices specifically, the suffering I gave to my family. My motivation is the family and my goal is to be with them; I will maintain my sober status. I have been sober for fourteen year and I want to stay that way the rest of my life." This activity will remain open longer until he learns additional concepts that will help him to better understand his substance abuse and negative behaviors. Due: This will be reevaluated by 4/2/2017.

Treatment Activity #2B: Inmate Wadley is tasked with present, support, and participates in the Community Meeting and seminars in a regular fashion. He is working in a new topic for his seminar hour. Inmate explained, "The topic is the role that the criminality plays in society. This helps me to continue developing honest insight into my drug use, and criminal lifestyle." Due: This activity will remain open for on-going evaluation throughout the next 60 day review, which will be by 4/2/2017.

Treatment Activity# 2C: Inmate Wadley continues energetic in activities that he can participate in, while incarcerated and after release, that are free from drugs and alcohol. He stated that he is active in his Muslim faith mentoring new brothers. Also he started his classes in Custodies Maintenances this is another goal to complete. This will be reviewed within 60 days. Due by 4/2/2017.

Understands concepts and demonstrates behavior(s)    **Date:** 11/30/2016  **Provider:** Garcia-Hernandez, Ariel CTS

| Inmate Name: | WADLEY, LODISE | | | Reg #: | 57447-066 |
|---|---|---|---|---|---|
| Date of Birth: | 12/20/1974 | Sex: | M | Race: BLACK | Facility: COP |
| Open Date: | 10/04/2016 | Closed Date: | | Status: Active | Discussed: Yes |

indicative of treatment progress

Treatment Activity #2A: Inmate Wadley started sharing his drug use history with his peers, he accepts and gave feedback. He stated, "Everything initiated by my wrong belief just for fun. The marijuana was the escape window of my frustration and disappointments." Due: This activity will be reevaluated by 2/1/2017.

Treatment Activity #2B: Inmate Wadley is tasked with present, support, and participates in the Community Meeting at least once a month. Using the News Letter, "THE CHALLENGER" Inmate Wadley presented as a writer the topic; "THE INVISIBLE PRISON" in which he presented the importance to have an open mindedness and embrace the change and a new and positive believe in life. Due: This activity will remain open for on-going evaluation throughout the next 60 day review, which will be by 2/1/2017.

Treatment Activity# 2C: Inmate Wadley started to identify activities that he can participate in, while incarcerated and after release, that are free from drugs and alcohol. He stated that the Program, and School, are keeping him busy and the litter free time hi is socializing with positive peers, and communicating with his family members. He noted his interest in Custodies Maintenances curses and obtains the proper certification. This will be reviewed within 60 days. Due by 2/1/2017.

# APPENDIX : C

## LETTERS OF SUPPORT FROM FAMILY AND FRIENDS

February 1, 2021

Colby Wadley

1635 Nedro Avenue

Philadelphia, PA 19141

Re: Compassionate Release - First Step Act for Lodise Wadley #57447- 066

Dear Judge of the District Court,

    My name is Colby Wadley and I'm writing on behalf of my brother Lodise Wadley. Lodise is my younger brother whom I'll be providing a stable home for when he is released from prison due to the Compassionate Release - First Step Act. I've been living at my residence for 21 years, where I raised my children and have plenty of room to house Lodise. I have been in my field of work for 30 years and currently at my job for 16 years. I'm a law abiding citizen and have never been in any legal trouble. In addition, I'm also an active member and officer of my church.

    I have a great relationship with Lodise. He's shown me throughout his years in prison, and now as an adult that he's overcome his shortcomings and mistakes made as a young man. His continuous display of good behavior throughout his time in prison and continuing his education shows me that he's ready to reenter society. We've discussed his release several times and what his new living conditions will be once he resides in my home. Lodise understands my morals, values and the way I conduct my daily life. I will provide emotional and financial support for my brother. He will also have support from family as well. Thank you for taking the time to read my letter. If you have any additional questions or need any further information, please don't hesitate to contact me at (267) 226-2083.

Sincerely,

Colby Wadley

To whom it may concern,                                                    2/28/2021

My name is Trina Nicholson and I'm writing this letter on behalf of my brother Lodise Wadley Jr.

Base on the severity of his sentence in accordance with the new law requirements set forth by

the First Step Act, my brother Lodise Wadley has petition to the court for a compassionate

release. I truly believe my brother should be considered for the compassionate release program.

My brother and I are very close and I've seen the growth and maturity in him over the years. I

know if given the opportunity he would be a great asset to our family and the community. This

would give him the opportunity to finish his degree and help others in the community. This also

gives him a second chance to be there for his children and be a role model for them. I'm currently

a Corrections Deputy at the Brevard County Sheriff Office. I have been blessed to be with the

agency for 5 years. As a Correctional Deputy working in a correctional institution this has given

me the experience to discern an inmate who is sincere about their rehabilitation process from

those who may not be mentally prepared to take the steps necessary to rehabilitate themselves.

Base upon this experience I believe that my brother is sincere and mentally prepared to start the

rehabilitation process. My brother has taken all the necessary steps to make a successful

transition into society and maintain his efforts. I truly believe he wants to better himself as a

man, father, son, student, professional and an all-around person. He has support from me and a

host of family members who will aid and assist him in his transition back to society. I'm asking

that you consider my bother Lodise Wadley and except his plea for a compassionate release.

Thank you for your time and consideration.

Trina Nicholson
886 Gladiola Cir
Rockledge, Fl 32955

PHILADELPHIA PA 190

2 MAR 2021  PM 6  L

Marian + Lodise Wadley
1414 South Ringgold St
Phila PA 19146

Mr. Lodise Wadley Sr. 57447-066
F C I Gilmer
P. O BOX 6000
Glenville WV. 26351

26351-600000

3-1-21

## To who it my concern

We are the parent of Lodise Wadley JR.
Marian Wadley and Lodise Wadley SR. We are
both retired. We will do what we can For
our son. He has been working very hard
to be a better man. We are very Proud
of him.

He have been Incarcerated for 18 years.
He study and got his high school diploma.
He study several college courese and
pass them all. As a teenager he took
a wrong path, we are asking you to give
him a second chance he have rehabitate
hisself. We both can testify to that. We
are both senior in our early seventy.

To whomever it may concern,

My name is Bilal El-Yousseph, and this letter is my personal testimoney to the character of Lodise Wadley that I have witnessed and benefited from. Before I can speak on the character of Mr. Wadley, I would like to describe the circumstances in which I met Mr. Wadley. In 2018 I was sentenced to 102 months in federal prison, it was my first time incarserated. I was beyond devastated. My depression coupled with my 14 year history of drug abuse, was a recipe for disaster. I was the epitome of the word vulnerable. In prison there is no shortage of predators that prey on addicts and first timers in prison, and I was both.

There isn't enough paper or words for me to express how truly grateful I am to Mr. Wadley who saw in me something I sadly didn't even see in myself. Mr. Wadley shared with me that even though he recieved over fifty years of prison he still was committed to bettering himself everyday. I was inspired by Mr. Wadley and followed his guidance. I was moved to 133, Mr. Wadley's unit in March of 2020 April of this year will be my one year of

sobriety and I am very close to my associates.
Last semester I was awarded Glenville State
college provosft academic recognition in recognition
of academic excellence, I want the reader to
know I immedietly gave this certificate to my
mentor Lodise Wadley because I know without
his daily mentorship and guidance my one
year of sobriety and making the dean's list
would not have been possible.

Sincerly,
Bilal El-Yousseph

# APPENDIX : D

## PROOF OF STATUTORY EXHAUSTION REQUIREMENT

Front — Page 1 of 8          ( See; Attachment

BP-A0148
JUNE 10
U.S. DEPARTMENT OF JUSTICE

INMATE REQUEST TO STAFF CDFRM

FEDERAL BUREAU OF PRISONS

| TO:.(Name and Title of Staff Member) | DATE: |
|---|---|
| Warden | January 20, 2021 |
| FROM: Lodise Wadley | REGISTER NO.: 57447-066 |
| WORK ASSIGNMENT: B-3 Orderly | UNIT: B-3 - 220 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting.
Continue on back, if necessary.  Your failure to be specific may result in no action being
taken.  If necessary, you will be interviewed in order to successfully respond to your
request.

571.61 initiation of Request - extraordinary or Compelling circumstance pursuant to
18 U.S.C. 3582(c)(1)(a), 18 U.S.C. 4205(G), of the First Step Act 18 U.S.C. 3582(c)(1)(A),
pub. I. No. 115-391, 132 stat. 5194, at 5239, BOP program statement 5050.50 and 1.61.13 cmt.
n. 1(d) . . . Section 571.61(a) states the Following:   A request for a motion under
18 U.S.C. 4205(G) or 3582(c)(1)(A) shall be submitted to the warden. Ordinarily, the request
shall be in writing, and submitted by the inmate. An inmate may initiate a request for
consideration under 18 U.S.C. 4205(G) or 3582(c)(1)(A) only when there are particularly extra-
ordinary or compelling circumstances which could not reasonably have been Foreseen by the
court at the time of Sentencing. The inmates request shall at minimum contain the Following:

(Do not write below this line)

DISPOSITION:

| Signature Staff Member | Date |
|---|---|

Record Copy - File; Copy - Inmate

PDF

Prescribed by P5511

This form replaces BP-148.070 dated Oct 86
and BP-S148.070 APR 94

1. The extraordinary or compelling circumstances that the inmates believes warrant consideration.

2. Proposed Release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request involves the inmates health information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment.

1b1.13 n.2 states as follows:

Foreseeability of extraordinary and compelling reasons. For purposes of this policy statement, an extraordinary and compelling reason need not have been unForeseen at the time of Sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been Known or anticipated by the sentencing Court does not preclude consideration for reduction under this policy statement, see 1b1.13 reduction in term of imprisonment under 3582(c)(1)(A)( policy statement)cmt. n.2.

## PARTICULARLY EXTRAORDINARY OR COMPELLING REASONS WHICH COULD NOT REASONABLY HAVE BEEN FORESEEN BY THE COURT AT THE TIME OF SENTENCING

The sentence I am serving today is severely dispropotionate to what Congress, The Sentencing Commission, and newly expressed Supreme Court decisions deems appropriate to promote Fairness and Justice in our Judicial system. The combination of Five Factors cumulatively provides a persuasive argument for extraordinary and Compelling reasons for Compassionate relief. First, I suffer from two stacked 18 USC §924(c)(1),

in which neither was a prior conviction at the time of the grand Jury indictment. I received 5 years for the first one and a consecutive 25 years for the second, totaling a 30 year sentence. Many Courts today are granting compassionate release for this type of sentence since Congress (via; First Step Act) have eradicated the old law that sentenced defendants in this way. These Courts have addressed the sheer and unusual length of those type of sentences and the "Gross Disparity" between the old sentences and the sentences congress now believes to be an appropriate penalty for a defendants' conduct. Today, a defendant in my shoes would only receive 5 years for the first 924(c) and 5 years for the second. The precedent in the Fourth Circuit is United States v. Mccoy, no. 20-6821 (4th cir. Dec. 2, 2020). Also see; United States v. Urkevich, No. 8:03-cr.37, 2019 WL 6037391 (D. Neb. Nov. 14, 2019). That 20 year disparity reaches the level of extraordinary and compelling reasons for compassion release.

Second, A career offender Designation (262 months consecutive to the 30 years) which is no longer applicable since Mathis v. United States, 136 s.ct. 2243, 195 L.Ed. 2d 604 (2016) deemed burglary no longer a crime of violence and the sentence Commissions removal of residential burglary from the list of crimes that lead to a Career offender designation. See; U.S.S.G. §4b1.2(a)(2), app. C. amend. 798 (2016). This clarification and removal disqualifies ———— burglary as a prior conviction susceptible to the Career offender enhancement. Third, I was convicted of 841(a); (B)(1)(c), a specified Amount (.664 milligrams) of crack (which is the predicate and basis for the Career offender designation, the 924(c) conviction and a school zone "enhancement"). This offense has been affected by the Fair Sentencing Act's reversal of the draconian crack-

laws that disproportionally affected the African Americans incarcerated in this country. This provision (The Fair Sentencing Act) was made retroactive by way of The First Step Act. The Fourth, First, and the Seventh Circuit all deem 841(b)(1)(c) a "Covered Offense" for the purpose of First Step Act relief, see United States v. Woodson, 962 F.3d 816-17 (4th Cir. 2020); United States v. Smith, 954 F.3d 446; 2020 U.S. App. LEXIS 11048 (1st Cir. 2020); and United States v. Hogsett, No. 19-3465 (7th Cir. Dec. 7, 2020). However, the Third Circuit does not deem it so. See; United States v. Britt, 2020 WL 4045895 (3rd Cir. 2020) Whatever, the case the objective of the Fair Sentencing Act was to create Fair Sentencing for defendants such as Petitioner, and it upsets the historic nature of the act to think that a defendant guilty of .664 milligrams should not benefit from it while defendents guilty of 290 grams or more receives the benefit. Fourth, the Supreme Courts decision in United States v. Rehaif, 139 S.Ct. 2191, 2194, 2200 (2019) has invalidated petitioner's 18 U.S.C. § 922(G)(1); 924(a)(2) convictions. It was ruled that the Goverment must prove that a defendant knows of his status as a person barred from possessing a firearm. In the instant case, the indictment did not allege that Petitioner, at the time he possessed the firearm, knew that he was rendered a prohibited person from possessing a firearm. Nor did the indictment reference Title 18 U.S.C. § 924(a)(2), the statute which creates the offense by sanctioning imprisonment when a person "knowingly violates" § 922(G). In Rehaif, the Court explained that there is no prosecutable, stand-alone violation of Title 18 U.S.C. § 922(G). Rather, a valid prosecution must be "under both 18 U.S.C. § 922(G) and § 924(a)(2)". Rehaif, __ U.S. __, 139 S.Ct. at 2200. See also, Id. at 2195 and 2194, 2196, 2197 where the Court repeatedly references prosecution under both title 18 U.S.C. §§ 924(G) and 924(a)(2). These statues

(3)

thus work together to define the offense in question. In the absence of one, however, there is NO FEDERAL CRIME. Accordingly, the indictment failed to describe an essential element of the offense created by Title 18 U.S.C. § 924(a)(2), failed to cite to § 924(a)(2), and therefore failed to allege an offense "against the laws of the United States". Title 18 U.S.C. § 3231. "An indictment that fails to charge all the elements of a crime must be dismissed." United States v. Cochran, 17 F.3d 56, 57 (3d Cir. 1994)(citing Russell v. United States, 369 U.S. 749, 763-64 (1962). Most important, is that the Fourth Circuit Court of Appeals has deem a Rehaif error structural error, see United States v. Gary. No. 18-4578 (4th Cir. March 25, 2020)

Fifth, Petitioner's rehabilitation efforts have been constant and efficient despite the practically life sentence (622 months) he is serving. He has completed the Challenge Program with good reviews and evaluations from the Doctor and treatment specialist. He has completed the Faith based Threshold program held by religious services. He has complete programs such as, Anger Management, Stop the Violence, Positive and Negative Awareness Group, Victim Impact Group, the Choice & Change Drug Education program and many more. Despite that, Petitioner has also completed career driven and opportunity positioning achivements, such as, attainment of Diploma's in both Criminal Law and as a paralegal, that were awarded by Blackstone Career Institute, Software Specialty Training award by Mountain Empire Community College in Virginia. Petitioner has Vocational training in three different areas, Custodial Maintenance from TPC Training Systems, Major Appliance repairs, and a Universal Certification for handling refrigerants as required by ESCO Institute and other H-Vac

certifications. Most important, Petitioner is currently enrolled at Glenville State College here at Gilmer FCI. Currently he has 66 credits on course to obtaining a bachelor degree in Business.

2| PROPOSED RELEASE PLANS, INCLUDING WHERE PETITIONER WILL RESIDE AND HOW HE WILL SUPPORT HIMSELF.

Upon release petitioner plans to use his diploma's in criminal law and as a paralegal to obtain employment as a paralegal. This is the preferable option. However, Petitioner is ready and willing to be employed in any available position that his vocational skills provides the opportunity for employment. He would reside with his brother, Colby Wadley in Philadelphia, at 1635 Nedro Ave, Phila, PA. 19141. He can be reached at (267) 226-2083. Petitioner's brother has never been in trouble with the law, maintains steady employment, and provides a healthy drug free enviroment conducive towards the maintenance of Petitioners rehabilitational efforts. He provides mentorship and stand as a positive role model.

## MATERIAL FACTS

The Following Facts are material to the remedy sought in this request:

1. On November 4, 2003, a Superceding indictment was returned against petitioner in the United States District Court for the Eastern District of Pennsylvania in case No. 2:03-cr-249. Through the Superceding indictment petitioner was charged

with violations of 21 U.S.C. §841(a)(1)(possession with the intent to distribute cocaine base (counts 1and 3); 21 U.S.C. §841(a2); (B)(1)(c)(distribution of a "dectable amount of cocaine base)(count 4); 21 U.S.C. §860(distribution of and possession with intent to distribute cocaine base within 1,000 feet of a school)(counts 2 and 5); 21 U.S.C. §856(a) (1)(maintaining a residence for manufacturing, distributing, and using controlled substance (count 8); 18 U.S.C. §924(c)(1)(carrying a firearm during and in relation to a drug trafficking crime)(count 6); 18 U.S.C. §924(c)(1)(possessing firearms in furtherance) of a drug trafficking crime)(count 9); 18 U.S.C. §922(G)(possession of a firearm by a convicted felon)(counts 7and 10); and 18 U.S.C. §931(possession of body armor by a convicted felon)(count 11).

2) On **February** 24, 2004, the parties proceeded to a bifurcated Jury trial. On February 26, 2004, Petitioner was convicted of counts 3,4,5,6,8 and 9 after completion of the first phase of the bifurcated trial Petitioner was the convicted of counts 7,10, and 11 after completing the second phase of the bifurcated Jury trial.

3) On January 20, 2005, Petitioner was sentenced to the following:

| | |
|---|---|
| Count 3 - 21 U.S.C. §841(a) | 262 Months |
| Count 4 - 21 U.S.C. §841(a) | 262 Months |
| Count 5 - 21 U.S.C. §841(a) | 262 Months |
| Count 7 - 18 U.S.C. §922(G) | 120 Months |
| Count 8 - 21 U.S.C. §856(a)(1) | 120 Months |
| Count 10 - 18 U.S.C. §922(G) | 120 Months |
| Count 11 - 18 U.S.C. §931( | 36 Months |
| Count 6 - 18 U.S.C. §924(c)(1) | 60 Months |
| Count 9 - 18 U.S.C. §924(c)(1) | 300 Months |

(6)

4. The sentence for 3, 4, 5, 7, 8, 10, and 11 were run concurrently (262 months). In accordance with 18 U.S.C. § 924(c)(1), the sentences for count 6 (60 Months) and 9 (300 Months), were run consecutive to the sentences for counts 3, 4, 5, 7, 8, 10, 11, and each other, for a total sentence of 622 Months.

5. On January 26, 2005, Petitioner filed a notice of Appeal seeking to appeal the January 20, 2005, sentence. See 2:03-CR-249 (E.D. Pa.) ECF No. 86.

6. On September 27, 2006, the United States Court of Appeals for the Third Circuit affirmed Petitioner's conviction and sentence. See; 2:03-CR-249 (E.D. Pa.) ECF Nos. 97, 99.

7. On March 26, 2007, the Supreme Court of The United States of America denied Petitioner's Petition for Writ of Certiorari. Wadley v. United States, 549 U.S. 1318, 127 S.Ct. 1894 (Mar. 26, 2007).

8. On April 22, 2008, Petitioner filed his First Motion to Vacate, Set Aside, or **Correct** sentence Pursuant to 28 U.S.C. § 2255 in the United States District Court for the Eastern District of Pennsylvania. See 2:03-CR-249 (E.D. Pa.) ECF No. 103.

9. On October 21, 2008, Petitioner's First § 2255 Motion was denied by Final order. See 2:03-CR-249 (E.D. Pa.) ECF No. 107. Petitioner attempted to appeal the denial of his First § 2255 Motion, but a certificate of appealability was not issued. See 2:03-CR-249 (E.D. Pa.) ECF Nos. 108, 111, 113.

10. On December 24, 2013, Petitioner Filed his second Motion to Vacate, Set Aside, or Correct Sentence Pursuant to § 2255 Motion in the United States District Court For the Eastern District of Pennsylvania. See 2:03-CR-249 (E.D. Pa.) No. 130. On January 14, 2014, Petitioner's second § 2255 Motion was denied by Final order. See 2:03-CR-249 (E.D. Pa.) ECF No. 131.

11. On June 29, 2016, Petitioner, with the assistance of counsel Filed his third Motion to Vacate, Set aside, or Correct Sentence pursuant to § 2255 Motion. See 2:03-CR-249 (E.D. Pa.) ECF No. 143. Petitioner alleged that his career offender sentence should be vacated pursuant to Johnson v. United States, 135 S.Ct. 2552 (2015). On August 26, 2017, Petitioner's third § 2255 Motion was dismissed upon Petitioner's Voluntary Notice of withdrawal. See 2:03-CR-249 (E.D. Pa.) ECF No. 146.

## CERTIFICATE OF SERVICE

I Hereby Certify that on January 22, 2021, I handed the Foregoing to my counselor Ms Putman to serve to the Warden of FCI Gilmer. This is my request For Compassionate Release base upon extraordinary and Compelling reasons (A sentence disproportionate to what congress now deems appropiate). As the Act states, a defendant may go to Court after the defendant has Fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days From the receipt of such a request by the Warden of the defendant's Facility whichever is earlier. 18 U.S.C. § 3582 (c)(1)(A).

/s/ Lodiy Wadley 57447-06e

B-3 220

For Verification oF the Facts presented in this request
please contact my Case manager.

Thank you

Sincerely,

Leslie Wadley

TRULINCS 57447066 - WADLEY, LODISE - Unit: GIL-B-C

----------------------------------------------------------------------------------------

FROM: 57447066
TO: WARDEN
SUBJECT: ***Request to Staff*** WADLEY, LODISE, Reg# 57447066, GIL-B-C
DATE: 02/02/2021 01:39:02 PM

To: Warden
Inmate Work Assignment: B-3

This is a inquiry as to my request for compassionate relief by way of 3582(a)(1)(c) based upon extraordinary and compelling reasons. I sent this request by mail on 1-25-21, as required in writing my request is not based on the COVIT-19 pandemic but rather 1b1.13, OTHER REASONS, which allows consideration for compassionate release where a defendant is sentenced base upon 924(c) convictions(stacked)and disproportionate to what congress now deems appropriate. The rule requires that the warden be given a 30 day grace period before a defendant could bring this request to the district court. In my request send by mail to you i demonstrated clearly that i deserve that right to be considered for the compassion due to the unfair length of my sentence compare to what congress, the sentencing commission and the Supreme Court now deems appropriate.  If for some reason you did not receive my request by mail please let me know and i will send you acopy ASAP. Thank you in advance for your consideration.



Lodise Wadley 57447-066
FCI Gilmer
P.O. Box 6000
Glenville, WV 26351

7016 2710 000

Cle
Uni
601
Roo
Ph

U.S.M.S.
X-RAY

LEGAL MAIL          LEGAL



MAIL

1743 7107

of Court For:

States District Court
Market Street
2609
, PA. 19106-1729

MAIL                    LEGAL MAIL